[No. E047157. Fourth Dist., Div. Two. July 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SAFETY NATIONAL CASUALTY CORPORATION, Defendant and
Appellant.

962

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Patricia Munroe, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

McKINSTER, J.—Defendant and appellant Safety National Casualty Corporation (the surety) appeals the trial court's denial of its motion to set aside forfeiture of a bail bond and to exonerate bail. The surety contends that the trial court lost jurisdiction to declare the forfeiture because it contends that the clerk failed to give notice of the forfeiture as required. For the reasons that follow, we reject the surety's contention and affirm the court's order.

## FACTS AND PROCEDURAL HISTORY

On November 2, 2006, the surety posted a $100,000 bond for the release of defendant Herminio Barba. Barba made a number of court appearances after his release on bail. On November 9, 2007, Barba failed to appear in court and the court declared the bond forfeited. A notice of forfeiture was mailed on November 13, 2007, well within 30 days after the declaration of forfeiture.

On May 8, 2008, the surety filed a notice of motion to vacate the order of forfeiture, on the ground that it did not receive notice of the forfeiture. In support of its motion, the surety presented an affidavit of Bill Martin, as the surety's attorney in fact (and notarized by J.A. Jasperson), that "Safety National Casualty Corporation, through normal business operations, has not, to our knowledge, received a forfeiture for [the] defendant/bond." County counsel opposed the motion, noting that it had received notice of the forfeiture in a timely manner, and that the surety's showing of nonreceipt was "minimal." The court made a factual finding that the surety was notified of the forfeiture, and denied the motion. The court granted additional time (to Nov. 17, 2008) to produce the defendant, pursuant to Penal Code section 1305.4, and noted that the bench warrant for Barba remained outstanding.

On September 4, 2008, the surety moved for reconsideration of its motion to vacate the forfeiture and exonerate the bail. Included in the reconsideration motion was the surety's request for judicial notice, including the bail bond, the minute order reciting Barba's failure to appear and the court's declaration of forfeiture, and the notice of forfeiture: "On November 13, 2007, the clerk mailed a notice of forfeiture to the parties. The certificate of mailing was not signed under penalty of perjury." The surety argued that, because the certificate of mailing included on the notice of forfeiture was not signed under penalty of perjury, the certificate was of no evidentiary value, and could not be used to substantiate or raise a presumption that the notice of forfeiture had in fact been mailed. In the absence of timely mailing a proper notice of forfeiture, the court lost jurisdiction to declare the bond forfeit. In addition, the surety now had its bond technician, Jacki Jasperson, prepare a new declaration of nonreceipt, describing the office procedures for all mail received from California courts, including verification and entry of all California bail forfeiture notices into the surety's computer system, but the nonexistence of any such computer entry for Barba's bond. Therefore, averred Jasperson, the surety "never received notice of forfeiture for [the Barba] bail bond . . . ."

The county opposed the motion for reconsideration, noting that Code of Civil Procedure section 1008[1] permits a motion for reconsideration only upon a showing of new or different facts, circumstances or law. The county urged that the surety "fails to offer any new or different facts, circumstances or law to support its Motion to Reconsider. The surety argued in its First Motion that it did not receive the Notice and therefore the court should vacate the forfeiture of bail." In support of its motion for reconsideration, the surety "offers the same failed argument and a declaration in support thereof . . . . Contrary to the surety's assertion, the fact that the declaration in support of the Motion to Reconsider is from a bond technician whereas the affidavit in support of the First Motion is from a different individual is not tantamount to a new or different fact, circumstance, or law in violation of § 1008."

The surety responded that the trial court should reconsider its earlier decision because the alleged deficiencies in the clerk's certificate of mailing created a jurisdictional defect, which may be raised at any time.

The trial court denied the motion to reconsider, and the surety has filed the present appeal.

### ANALYSIS

### I. Standard of Review

" 'An order denying a motion to set aside a forfeiture is appealable. [Citations.]' [Citation.] 'The determination of a motion to set aside a bail forfeiture is in the discretion of the trial court and should not be disturbed on appeal unless an abuse of discretion appears in the record. [Citation.]' [Citation.]" (*American Contractors Indemnity Co. v. County of Orange* (2005) 130 Cal.App.4th 579, 583 [29 Cal.Rptr.3d 916].)

The surety's argument also involves matters of statutory construction; interpretation of statutory language presents an issue of law which we review de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

### II. The Trial Court Properly Denied the Motion to Vacate the Forfeiture and Exonerate the Bond

Penal Code section 1305, subdivision (a), prescribes that a court "shall in open court declare forfeited the undertaking of bail . . . if, without sufficient

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

excuse, a defendant fails to appear" for certain proceedings such as arraignment, trial, judgment, or other proceedings requiring the defendant's presence. Penal Code section 1305, subdivision (b), prescribes procedures for giving notice of the forfeiture if the bond is over $400: "If the amount of the bond or money or property deposited exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety or the depositor of money posted instead of bail. At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond. The clerk shall also execute a certificate of mailing of the forfeiture notice and shall place the certificate in the court's file. If the notice of forfeiture is required to be mailed pursuant to this section, the 180-day period provided for in this section shall be extended by a period of five days to allow for the mailing. [¶] If the surety is an authorized corporate surety, and if the bond plainly displays the mailing address of the corporate surety and the bail agent, then notice of the forfeiture shall be mailed to the surety at that address and to the bail agent, and mailing alone to the surety or the bail agent shall not constitute compliance with this section. [¶] The surety or depositor shall be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond."

The surety argues that the key provision here is whether the clerk "fail[ed] to mail the notice of forfeiture in accordance with this section," as required in Penal Code section 1305, subdivision (b)(1). That is, the surety contends that the clerk's certificate of mailing was defective in certain technical aspects.

██ The provisions of Penal Code section 1305 (and § 1306) are said to be "jurisdictional." (*People v. International Fidelity Ins. Co.* (2007) 151 Cal.App.4th 1056, 1060 [60 Cal.Rptr.3d 355].) "The purpose of posting bail is to insure the defendant will make his appearances in court and obey the court's orders and judgment. Forfeiture of a bail bond is not to be viewed as a means of revenue for the government or a punishment of the surety. [Citation.] The forfeiture of bail is governed by [Penal Code] sections 1305 to 1309. [Citation.] The procedures set out in the sections which are relevant here, [Penal Code] sections 1305 and 1306, are jurisdictional prescriptions. [Citation.] Because the law disfavors forfeitures, [Penal Code] sections 1305 and 1306 must be strictly construed in favor of the surety to avoid a forfeiture of the bond. [Citation.] ██ '[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of its

jurisdiction. [Citations.]' [Citations.]" (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 16 [82 Cal.Rptr.2d 214].)

The surety here urges that the court lost jurisdiction to forfeit the bail, because the clerk failed to comply strictly with all the statutory provisions of the forfeiture notice. However, the surety's contention is not that the clerk failed to comply with Penal Code section 1305 or 1306, but that the clerk's certificate failed to comply with a different statute, Code of Civil Procedure section 2015.5.

Section 2015.5 provides in relevant part: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same . . . , such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California. . . ."

Section 2015.3 provides: "The certificate of a sheriff, marshal, or the clerk of the superior court, has the same force and effect as his or her affidavit."

From these two provisions, the surety distills a requirement that a clerk's certificate, such as a certificate of mailing, must meet all the criteria of section 2015.5, including that it be signed under penalty of perjury. We disagree.

■ First, section 2015.5 provides that "whenever" a matter is required or permitted to be supported by a sworn statement, an unsworn statement may be substituted if it follows the prescribed format, including being made under penalty of perjury under the laws of California. If a sworn statement is not required, however, then section 2015.5 does not apply.

■ Second, if it was mandatory for a clerk's certificate to comply with the requirements of section 2015.5, then section 2015.3 would be redundant and unnecessary. "We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054].)

As the proper interpretation of sections 2015.5 and 2015.3 appears to present an issue of first impression, we requested supplemental briefing from

the parties. The surety argues that there are three modes of testimony permitted to show a fact: affidavit, deposition, and oral testimony. (§ 2002.) Oral testimony is sworn. A written deposition is also made under oath, with notice to the adverse party. (§ 2004.) An affidavit is a written declaration made under oath, but without notice to the adverse party. (§ 2003.) An affidavit, as a means of testimony, is evidence capable of proving a fact. The surety argues, however, that "[a] 'certificate,' of whatever kind, is not a mode of testimony and is not evidence."

Under the surety's view, a declaration or other writing under section 2015.5 "is a statutory means of evidence equivalent to an affidavit and thus is evidence to prove a fact." A qualifying writing may be "an 'unsworn statement, declaration, verification or certificate.' " However, "[t]hese forms of writing are generic and the only thing that gives them substance as evidence is that they are executed under penalty of perjury. If the writing is not executed under penalty of perjury and is not dated and signed in California [or otherwise meet the requirements for an out-of-state writing], it is not evidence and is not admissible as such in any court proceeding." Thus, the surety concludes, a "certificate, if it is not made under penalty of perjury pursuant to section 2015.5, is not evidence and does not have the force of evidence." The surety points out that there are several kinds of certificates referenced in many different statutory provisions, and suggests that section 2015.3 "is as generic as the many uses made of the word 'certificate' in the various statutes. . . . [¶] . . . [A] clerk's certificate under section 2015.3 is not required to be made under penalty of perjury as prescribed by section 2015.5. That, however, does not end the inquiry. The real question is, to what use does a particular clerk's certificate apply? As stated above, there are a myriad of uses in the statutes, and section 2015.3 refers to no specific certificates and does not apply to all of them." The surety contends that clerk's certificates under section 2015.3 are "generic," whereas certificates of mailing are governed by more specific statutes, such that the clerk's certificate of mailing is subject to a rebuttable presumption of proof that a certificate has been mailed. Indeed, the surety contends that "this is not a case that concerns section 2015.3."

The surety's letter brief acknowledges that a clerk's certificate under section 2015.3 is not required to be made under penalty of perjury, as prescribed by section 2015.5. This concession is a departure from the argument initially presented. In the court below and in earlier briefing on appeal, the surety had argued that the clerk's certificate of mailing must comply with section 2015.5, including that it must be made under penalty of perjury. The surety's position now corresponds with the People's; the People argued both below and on appeal that the clerk's certificate need not comply with section

2015.5. We agree. We part company with the surety's analysis to the extent it asserts that a certificate has no evidentiary value unless made under penalty of perjury.

■ A writing under section 2015.5, which is made under penalty of perjury, may take the form of a certificate. Such a certificate, if it complies with the requirements of section 2015.5, is deemed the equivalent of an affidavit. That is, it is treated the same as a sworn evidential statement, and thus may have evidentiary status. Section 2015.3 provides that a clerk's certificate also "has the same force and effect as his or her affidavit," and thus it also has the same evidential status as a testimonial statement sworn under oath. Yet section 2015.3, unlike section 2015.5, does not prescribe that the certificate must be made under penalty of perjury. This distinction makes sense.

Section 2015.5 applies to the general population. The purpose of section 2015.5 is stated in *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214 [87 Cal.Rptr.2d 339]: "The whole point of permitting a declaration under penalty of perjury, in lieu of a sworn statement, is to help ensure that declarations contain a truthful factual representation and are made in good faith. [Citation.] 'The oath or declaration must be in such form that criminal sanctions of perjury might apply where material facts so declared to be true, are in fact not true or are not known to be true.' [Citations.]" (*Id.* at p. 1223.) In the case of the general population, the acknowledgment that the penalty of perjury applies is needed to impress upon the declarant the gravity of the duty to tell the truth.

■ A sheriff or marshal, on the other hand, is a sworn peace officer serving in the court and, as such, is a levying officer enforcing the writs and judgments of the court (see §§ 699.510, 699.520); similarly, the clerk of the superior court is an official empowered to administer oaths in his or her own right, and to carry out the administrative responsibilities of the court (§ 2093; cf. also § 75).[2] "A deputy county clerk is ex officio a clerk of the superior court, and as such has power upon the trial of an action in such court to administer oaths to witnesses upon such trial [pursuant to section 2093]." (*People v. Collins* (1907) 6 Cal.App. 492, 501 [92 P. 513], italics omitted.) That the court clerk issues an official certification as part and parcel of his or

---

[2] Section 2015.3 was enacted by Statutes 1969, chapter 1611, section 28, page 3398, and provided that "The certificate of a sheriff, marshal, or constable has the same force and effect as his affidavit." It was amended in 1982 to add the words "or the clerk of the superior, municipal, or justice court," and changed "his" to "his or her." (Stats. 1982, ch. 834, § 1, p. 3156.) In 1996, section 2015.3 was amended to delete the reference to a constable. In 1998, changes were made to reflect the elimination of the justice courts. (Stats. 1998, ch. 931, § 127, p. 6468.) In 2002, further changes were made to reflect the unification of the municipal and superior courts. (Stats. 2002, ch. 784, § 88.)

her duties is sufficient to ensure that the certificate contains truthful factual representations and is made in good faith.

Our conclusion finds some support in *Conservatorship of John L.* (2010) 48 Cal.4th 131 [105 Cal.Rptr.3d 424, 225 P.3d 554]. There, an attorney represented to the probate court that her client, a proposed conservatee, had been informed of the conservatorship, and the client had agreed not to contest the petition. On appeal, the client objected that the attorney's statement to the court was improper, because it had not been made under oath. There was no suggestion that the attorney had misrepresented the facts, or that the attorney lacked authority to waive the client's presence. The appellate court held that counsel's representations need not be sworn: "We conclude that sworn statements are not necessary in this context. Misrepresenting to the court that a client has no objection to a conservatorship is, among other things, a serious violation of the Business and Professions Code and the State Bar Rules of Professional Conduct. (Bus. & Prof. Code, §§ 6068, subd. (d), 6106; Rules Prof. Conduct, rule 5-200(B).) Because an attorney remains answerable for such misconduct (Bus. & Prof. Code, §§ 6077, 6100; see *Clark v. Willett* (1868) 35 Cal. 534, 539), there is little to be gained by requiring counsel to submit her statements under oath." (*Id.* at p. 155.)

Our conclusion is further bolstered by an examination of other cases in which the requirements of section 2015.5 were held inapplicable to clerk or law enforcement certificates.

In *Stone v. Bach* (1978) 80 Cal.App.3d 442 [145 Cal.Rptr. 599], a defendant sought to avoid dismissal of his appeal on the ground that the papers supporting the motion to dismiss the appeal were defective, including the clerk's certificate pursuant to California Rules of Court, former rule 42 (see now rule 8.57).[3] Specifically, the defendant complained that the clerk's certificate in support of the motion to dismiss did not comply with section 2015.5, because the place of execution was not shown. The court rejected the

---

[3] California Rules of Court, rule 8.57, formerly rule 42, provides in part: "(a) Motion to dismiss appeal[.] [¶] A motion to dismiss an appeal before the record is filed in the reviewing court must be accompanied by a *certificate of the superior court clerk*, a declaration, or both, stating: [¶] (1) The nature of the action and the relief sought by the complaint and any cross-complaint or complaint in intervention; [¶] (2) The names, addresses, and telephone numbers of all attorneys of record—stating whom each represents—and unrepresented parties; [¶] (3) A description of the judgment or order appealed from, its entry date, and the service date of any written notice of its entry; [¶] (4) The *factual basis of any extension of the time to* appeal under rule 8.108; [¶] (5) The filing dates of all notices of appeal and the courts in which they were filed; [¶] (6) The filing date of any document necessary to procure the record on appeal; and [¶] (7) The status of the record preparation process, including any order extending time to prepare the record. . . ." (Italics added, boldface omitted.)

contention, stating: "section 2015.5 deals with sworn statements only, and there is nothing in rule 42 which requires that the clerk's certificate be under oath." (*Stone*, at p. 448.)

In another case, the appellate court held that the requirements of Code of Civil Procedure section 2015.5 did not apply to the certificate of a foreign law enforcement officer under Penal Code section 1305, subdivision (g), another portion of the bail forfeiture statutes at issue here. In *County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661 [61 Cal.Rptr.3d 367], a bail bond agency moved to vacate a bail bond forfeiture and exonerate bond pursuant to a statute that allowed such exoneration when the agency located the defendant in another jurisdiction and brought him before a local law enforcement officer, but the district attorney elected not to seek the defendant's extradition. Penal Code section 1305, subdivision (g), provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond . . . ."

The trial court had denied the bail agent's motion to vacate the forfeiture and exonerate the bond, on the ground that the foreign law enforcement officer's affidavit, while signed under penalty of perjury as provided in Penal Code section 1305, subdivision (g), did not reference the perjury laws of California, as is generally required under Code of Civil Procedure section 2015.5, for unsworn affidavits executed outside California.[4] The appellate court held that the foreign law enforcement officer's affidavit "was not prepared for use at a court hearing to prove the truth of the matters asserted—that Mondragon was a law enforcement officer of the State of Guerrero and he had positively identified the person being temporarily detained in his presence as Hanoch Ambramson. Rather, the affidavit was prepared in order to meet the requirement of [Penal Code] section 1305[, subdivision ](g) that the bail agent informed the district attorney 'of the location of the defendant.' When the district attorney elected not to seek Ambramson's extradition the affidavit was offered into evidence at the bail

---

[4] The affidavit also had not been taken before an ambassador, minister, consul, vice consul, consular agent or under seal of a judge of the foreign court, as required under section 2014, for affidavits taken outside the United States. The affidavit referred to in Penal Code section 1305, subdivision (g), did not, however, require these formalities, which would be wholly unproductive in fulfilling the statutory purpose of expediting the showing needed to exonerate bail, where the absconding defendant is located in a foreign country, but the prosecutor elects not to extradite.

exoneration hearing to show American had met certain requirements of [Penal Code] section 1305[, subdivision ](g). It showed Mondragon was a law enforcement officer of the State of Guerrero; it stated Mondragon had positively identified Ambramson as the man temporarily detained in his presence by bail agent Watson; and it was signed under penalty of perjury. [¶] Thus, although Mondragon's affidavit ended up being offered as evidence in support of American's motion to exonerate bail its relevance was not as evidence of the truth of the matters stated in the affidavit but as evidence the district attorney had elected not to seek extradition 'after being informed of the location of the defendant.' " (*County of Los Angeles v. American Contractors Indemnity Co., supra,* 152 Cal.App.4th at pp. 667–668.)

The surety's opening brief relied on *American Contractors Indemnity Co. v. County of Orange, supra,* 130 Cal.App.4th 579, for the proposition that the clerk's certificate must comply with Code of Civil Procedure section 2015.5, i.e., a declaration under penalty of perjury. The surety appears now to have abandoned that contention, but in any event the assertion is a misinterpretation of the case. There, a surety moved to set aside a forfeiture and exonerate a bail bond, arguing that the notice of forfeiture did not comply with the requirements of Penal Code section 1305, subdivision (b). The surety argued that the notices were defective because neither the notice of forfeiture nor the clerk's certificate of mailing included the addresses of the surety and the bail agent. (The address requirements are requirements of Pen. Code, § 1305, subd. (b), not Code Civ. Proc., § 2015.5.) The appellate court agreed that the notices were defective under Penal Code section 1305, subdivision (b): "Here, the Notice of Forfeiture included four pages, the Notice of Forfeiture, the bail bond, and the bail receipt. The Notice of Forfeiture was addressed to Pacific and American, but it does not include their addresses. More importantly, the court clerk's declaration of service by mail does not include their addresses as required by section 1013a, subdivision (4). The court clerk's declaration of service by mail must include the surety's and bail agent's addresses. (§ 1013a, subd. (4) . . . .) Although the bail bond includes American's and Pacific's addresses, it is not part of the certificate of mailing and does not satisfy section 1013a, subdivision (4)'s requirements because the *bail bond* was not prepared by the clerk under penalty of perjury." (*American Contractors,* at p. 583, fns. omitted, italics added.) Note, the court did not hold that the certificate of mailing was required to be prepared under penalty of perjury. Rather, it held that the bail bond—a separate document that did not originate with the court—in contrast with the notice of forfeiture, could not be incorporated into the clerk's certificate of mailing; the *bail bond* had not been prepared by the clerk under penalty of perjury. However, even though the notices were defective under Penal Code section 1305, subdivision (b), the defects did not

require that the bond be exonerated, because other evidence showed that the surety had received actual notice of the forfeiture. (*American Contractors*, at p. 584.)

Here, by contrast, although the clerk's certificate of mailing did not separately state the addresses of the surety and the bail agent, as prescribed under Penal Code section 1305, subdivision (b), the addresses *were* included in the notice of forfeiture, a document which does originate with the court. Both notices appear on the same page. The clerk's certificate of mailing thus substantially complied with the requirements of Penal Code section 1305, subdivision (b).

█ The certificate also complied with Code of Civil Procedure section 2015.3, which deems a clerk's certificate the equivalent of an affidavit, without regard to Code of Civil Procedure section 2015.5. Our conclusion accords with *In re Marriage of Patscheck* (1986) 180 Cal.App.3d 800 [225 Cal.Rptr. 787]. There, the husband appealed the judgment, asserting that "the date of entry of judgment is suspect because it is not supported by a sworn statement and because it is the same as the date of filing." (*Id.* at p. 803.) The court held, however, that "[t]here is nothing suspicious or improper in either circumstance. *Official records of actions taken by a court clerk are presumed correct* [citation] *and need not be supported by sworn statements.* Entry of a judgment or order on the date of filing is commonplace." (*Ibid.*, italics added.) Similarly here, the clerk's certificate of mailing, as prescribed in Penal Code section 1305, subdivision (b), is an official record of an action taken by the court clerk (an officer himself or herself empowered to administer oaths) and need not be additionally supported by a sworn statement.

The surety's contention, that the court lost jurisdiction to act, is premised primarily on the thesis that the clerk's certificate of mailing failed to comply with section 2015.5. Because we have held that provision inapplicable, and section 2015.3 applicable instead, the surety's claim that the certificate of mailing is a nullity, fails.

The surety's secondary argument is that, even if the certificate of mailing may be considered, the trial court erred in denying its motion to vacate the forfeiture and exonerate the bond, because it produced evidence that it had not received the notice of forfeiture, which in turn rebutted any presumption that the notice had in fact been mailed. In the absence of mailing of the notice of forfeiture, the surety argues, the court lacked jurisdiction to proceed further to enforce the forfeiture.

█ In the procedural posture in which the case presents itself, we find the surety's argument without merit. The clerk issued a certificate of mailing that

substantially complied with the requirements of Penal Code section 1305, subdivision (b) (i.e., it incorporated the addresses of the surety and the bail agent on the face of the same page, in the notice of forfeiture itself).[5] There is a presumption that an official duty has been regularly performed. (Evid. Code, § 664.) The surety's evidence was insufficient to overcome this presumption. In its original motion to vacate the forfeiture and exonerate the bond, the only contrary evidence presented by the surety was the affidavit[6] of its attorney in fact, that the surety "through normal business operations, has not, to our knowledge, received a forfeiture for [the] above referenced defendant/bond." As county counsel pointed out in response, the evidence of nonreceipt was "minimal," and did not demonstrate the clerk's failure to mail the notice. Mailed service is complete upon deposit in the mail. (Code Civ. Proc., § 1013, subd. (a).) At most, the declaration established that the surety had no record it received the notice, but the surety's failure to keep adequate records is not a ground for vacating the forfeiture. In addition, the county counsel had itself received a copy of the notice of forfeiture in a timely manner.[7] The trial court made a specific factual finding that the surety "was notified of bail bond forfeiture." This was supported by substantial evidence; the trial court did not abuse its discretion in so finding.

■ It was only upon moving for reconsideration, under section 1008, that the surety refined its arguments and evidence concerning the nonreceipt of the notice of forfeiture. Denial of a motion for reconsideration is not an appealable order. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2008) 166 Cal.App.4th 1625, 1632–1633 [83 Cal.Rptr.3d 494].) In any case, the motion for reconsideration was properly denied. It was only then that the surety provided the declaration of its bond technician, Jasperson, describing the employee's duties and the office procedures for handling forfeiture notices.[8] This information was, however, not "new" information, as required to support a motion for reconsideration under section 1008. A motion for reconsideration must be "based upon new or different facts, circumstances, or law." (§ 1008.) While the surety did raise a new issue of

---

[5] The clerk's certificate of mailing recited that the "Clerk of the Superior Court of California, County of Riverside, do hereby certify that on the date below, a copy of the foregoing NOTICE OF FORFEITURE OF BAIL was served by depositing said enclosed copy in a sealed envelope with postage thereon fully prepaid in the mail in the City of [X] Murrieta, ( ) Riverside, ( ) Banning, Riverside, California. [¶] 11/13/07 By: [signature] [¶] Deputy Clerk."

[6] The "affidavit" of the attorney in fact does not comply with Code of Civil Procedure section 2015.5, with respect to declarations made outside California. It is, however, additionally subscribed and sealed by a notary public; Government Code sections 8205 to 8207 provide that notaries public in California are empowered to administer oaths for purposes of preparing sworn statements.

[7] The copy to county counsel was noted, however, to be sent by interoffice mail.

[8] The original declaration of the surety's attorney in fact had been notarized by "J.A. Jasperson."

law—i.e., the failure of the clerk's certificate of mailing to comply with section 2015.5—that issue was without merit. The surety's assertedly new facts were at all times within the surety's knowledge, discoverable with due diligence. Facts of which a party seeking reconsideration was aware at the time of the original ruling are not "new or different facts," as would support a trial court's grant of reconsideration. (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 [95 Cal.Rptr.3d 464].) To merit reconsideration, a party must also provide a satisfactory reason why it was unable to present its "new" evidence at the original hearing. (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1265 [93 Cal.Rptr.2d 725].) The surety here provided none.

■ Adverting again to the rules of construction, which require us to ascertain and give effect to the intent of the Legislature, we note with respect to Penal Code section 1305, that "[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. In matters of this kind there should be no element of revenue to the state nor punishment of the surety. [Citation.]" (*People v. Wilcox* (1960) 53 Cal.2d 651, 656–657 [2 Cal.Rptr. 754, 349 P.2d 522].) While the provisions of Penal Code section 1305 "must be strictly followed or the court acts without or in excess of its jurisdiction" (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 354 [5 Cal.Rptr.2d 620]), "[t]he burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements" (*ibid.*; accord, *County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027 [79 Cal.Rptr.3d 421]). "Nevertheless, the 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' [Citation.] Thus, when there is a breach of this contract, the bond should be enforced." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657–658 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

■ Throughout the entire proceedings, including the initial period of 185 days after the forfeiture, and the extended compliance period of 180 additional days (Pen. Code, § 1305.4), which the trial court did grant, the surety failed to produce the absconding defendant. " 'The escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against. . . . The fact that [the surety] is now unable to deliver the defendant . . . will not shift the risk to the obligee.' [Citations.]" (*County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 805, fn. 6 [71 Cal.Rptr.2d 811].)

## DISPOSITION

The trial court did not abuse its discretion in denying the surety's motion to vacate the forfeiture and exonerate the bond. The denial of the motion for reconsideration is not appealable. The order denying the motion to vacate the forfeiture and exonerate the bond is therefore affirmed. Costs on appeal are awarded to Respondent.

Hollenhorst, Acting P. J., and Richli, J., concurred.