Filed 4/21/16  P. v. United States Fire Ins. Co. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063514 |
| v. | (Super.Ct.No. RIC1500199) |
| UNITED STATES FIRE INSURANCE COMPANY, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Affirmed.

Law Office of John Rorabaugh and John M. Rorabaugh for Defendant and

Appellant.

Gregory P. Priamos, County Counsel, and Anita Willis, Karin Watts-Bazan, and

Lisa Traczyk, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant, United States Fire Insurance Company (Surety), appeals the denial of its motion to vacate the summary judgment on a $25,000 bail bond. Surety claimed that its bail agent, John Garcia, doing business as John Garcia Bail Bonds (Garcia), did not receive the clerk of court's notice of forfeiture of the bail bond in the mail. (Pen. Code, § 1305, subd. (b)(1) [bail bond must be exonerated if clerk of court fails to mail notice of forfeiture to both the surety and the bail agent within 30 days of the order forfeiting the bail bond].)[1] The clerk's certificate of mailing showed that the notice was timely mailed to both Surety and Garcia, and Surety did not claim that Surety did not receive the notice of forfeiture.

On appeal, Surety claims that its motion to vacate the summary judgment was erroneously denied because, at the hearing on the motion, the court *conclusively presumed*, based on Evidence Code sections 641 and 664, that the court clerk mailed the notice of forfeiture and that Garcia received it. Surety argues the court erroneously failed to consider Garcia's sworn statements that he did not receive the notice and the resulting inference that the clerk did not mail the notice to Garcia.

We reject this claim. As we explain, it is based on a misinterpretation of the court's comments at the hearing on Surety's motion. The court's comments as a whole show that it properly considered Garcia's claim that he did not receive the notice, and properly applied Evidence Code sections 641 and 664. Surety also claims its motion

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

should have been granted based on the equitable doctrine of extrinsic mistake—the extrinsic mistake being that the mailman did not deliver the notice to Garcia. We also reject this claim.

## II.  STATUTORY BACKGROUND AND STANDARD OF REVIEW

A. *The Applicable Bail Statutes*

Section 1305 governs the forfeiture of a bail bond and sets forth the grounds upon which the forfeiture may be set aside and the bail exonerated. First, when the defendant released on the bail fails to appear in court as lawfully required and without sufficient excuse, the trial court must declare the bail bond forfeited in open court. (§ 1305, subd. (a); *People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 762.) If, as here, the bail bond amount exceeds $400, the court clerk must serve notice of the forfeiture on the surety and its bail agent within 30 days of the forfeiture. (§ 1305, subd. (b).) The surety must be "released of all obligations under the bond" if the clerk does not mail the notice of forfeiture in accordance with section 1305. (§ 1305, subd. (b)(1).)

The surety then has 185 days from the date the notice of forfeiture is mailed (180 days plus five days for service by mail), to obtain relief from the forfeiture. (*People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 999-1000.) The 185-day period is known as the exoneration period or the appearance period (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377, 1380), and may be extended by 180 days (§ 1305.4). If the surety fails to obtain relief from the forfeiture within the appearance period, including extensions, the trial court is required to enter summary judgment against the surety and in

3

favor of the People on the bond, plus costs, within 90 days of the expiration of the appearance period.  (§ 1306, subds. (a), (c).)

A summary judgment on a bail bond is appealable when it was not entered in accordance with the consent given in the undertaking or bail bond, or when it was not entered in accordance with sections 1305 and 1306.  (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 662-664; *People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1047 ["The only issue in a challenge to the summary judgment [on a bail bond] is whether it was entered pursuant to the terms of the consent, which requires compliance with Penal Code sections 1305 and 1306."].)

B.  *Standard of Review*

"'''Certain fixed legal principles guide us in the construction of bail statutes.  The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail.  [Citation.]  Thus, [Penal Code] sections 1305 and 1306 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.  [Citation.]'''  [Citation.]  'The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.'  [Citation.]"  (*People v. American Contractors Indemnity Co.*, *supra*, 238 Cal.App.4th at p. 1044.)

"The resolution of a motion to set aside a bail forfeiture is within the trial court's discretion and should not be disturbed on appeal unless an abuse of discretion appears in

4

the record." (*People v. Legion Ins. Co.* (2002) 102 Cal.App.4th 1192, 1195.) The trial court must carefully follow the requirements of sections 1305 and 1306 in declaring a bail bond forfeited and in entering summary judgment on the bail bond, or its acts will be considered in excess of its jurisdiction. (*People v. American Contractors Indemnity Co.*, *supra*, 238 Cal.App.4th at p. 1044.) Due to the harsh results of a forfeiture and the jurisdictional nature of statutory compliance, appellate courts carefully review the record of a bail to ensure strict statutory compliance. (*People v. Bankers Ins. Co.* (2009) 171 Cal.App.4th 1529, 1532-1533.)

## III. FACTS AND PROCEDURAL BACKGROUND

On March 8, 2014, Surety, through its bail agent, Garcia, issued and filed bail bond No. U25-20491367 in the amount of $25,000 to secure the appearance in court of William James Patterson. Patterson appeared in court for his May 2, 2014, arraignment, and he also appeared on June 2, 2014, when the court determined he had violated his probation and scheduled a sentencing hearing on July 1, 2014. Patterson then failed to appear in court on July 1, 2014, and a bench warrant was issued for his arrest.

On July 1, 2014, the bail was ordered forfeited and the clerk of court issued and filed a notice of forfeiture of the bail bond. (§ 1305, subds. (a), (b).) The notice of forfeiture included the clerk's "certificate of mailing," affirming that, on July 1, 2014, the clerk deposited the notice of forfeiture in the court's "outgoing mail," addressed to Surety and Garcia at the addresses listed on both the notice and the bond. (§ 1305, subd. (b).)

The 185-day appearance period for moving to discharge the forfeiture expired on January 2, 2015. (§ 1305, subds. (b), (c).) On January 6, 2015, the court entered summary judgment on the bail bond in the amount of $25,395, plus court costs. (§ 1306.) And on January 8, 2015, the court clerk mailed a notice of summary judgment to the parties. The copy mailed to Garcia from the Office of County Counsel for the County of Riverside was returned as undeliverable. On February 19, 2015, Surety paid the bond in full.

On February 20, 2015, Surety filed a motion to set aside the summary judgment, discharge the forfeiture, and exonerate the bail bond. The motion was based on Garcia's declaration that he never received the notice of forfeiture in the mail and he did not know the bail bond had been forfeited until Surety notified him that "a summary judgment had been received by them." At that point, Garcia contacted Patterson's father, the indemnitor on the bail bond who had had been making $100 monthly premium payments on the bond. Garcia had been in regular contact with Patterson's father since the bond was posted in March 2014. Patterson's father told Garcia that Patterson was "currently with" him. Garcia then spoke with Patterson. Patterson told Garcia that his attorney had "resolved" his case, but Patterson agreed to contact his attorney "to arrange to make an appearance in court" on the case. Had Garcia received notice of the forfeiture, Garcia would have "immediately taken steps to return [Patterson] to Court."

The People opposed Surety's motion based on the clerk's certificate of mailing, which showed that the clerk deposited the notice of forfeiture in the court's outgoing mail

6

on July 1, 2014.  The People argued that "[e]ven if the court were to set aside both the evidentiary presumption that a document mailed is received [Evid. Code, § 641] and the additional evidentiary presumption . . . that a government employee such as a deputy court clerk has performed her official duties [Evid. Code, § 664], the testimony of the unbiased deputy court clerk outweighs the declaration of a biased bail agent which stands to gain financially."  The People also pointed out that section 1305, subdivision (b) requires that notice of forfeiture be *mailed*, but does not require that "receipt be guaranteed."

At an April, 3, 2015, hearing, the court denied the motion.[2]  At the outset of the hearing, the court explained that sections 1305 and 1306 require the surety to be "released of all obligations under the bond if, among other things, the clerk fails to mail the notice of forfeiture . . . within 30 days after the entry of the forfeiture. . . . [I]f proper mailing occurs, the Court may, within 90 days, enter summary judgment . . . in the amount of the bond plus costs.  [¶]  In this case, we have a declaration from the clerk that the notice was mailed.  Evidence Code section 641 creates a rebuttable presumption that

---

[2]  In its opening brief on appeal, Surety represents that, "[o]n March 24, 2015 the bail agent [Garcia] brought the defendant [Patterson] to court and surrendered him."  The record does not support this assertion.  Surety cites a March 24, 2015, reporter's transcript, but the record does not contain any such transcript.  Further, the reporter's transcript from the April 3, 2015, hearing on Surety's motion indicates that Patterson was still out of custody at that time, and that counsel for Surety expected him to show up in court at "any moment."  The register of actions also showed that Patterson was arrested on April 6, 2015, appeared in court on April 7, 2015, and his bail was set at $100,000.  On April 15, 2015, Patterson admitted he had violated the terms of his probation and was sentenced to 16 months in jail.

a properly addressed letter has been received. The Court notes that Penal Code section 1305 [subdivision (b)] requires mailing, not actual receipt." The court also observed that "there is a presumption that government employees are performing their duty. [Evid. Code, § 664]."

The court then heard argument from Surety and the People. Surety's counsel represented that Garcia had been conducting his bail bond business at the address listed on the bond until December 2014, when he began working from his home because his "landlord did not give him his mail." Garcia was sworn and briefly testified. He did not address whether his landlord had not been delivering his mail, but he reaffirmed that he did not receive the notice of forfeiture; he did not learn of the forfeiture until the Surety notified him of the summary judgment; and had he known of the forfeiture he would have contacted Patterson and immediately returned him to court. He had been conducting business in the same location for 24 years, and he had never failed to return a defendant to court. He did not have a "tickler system" to track and he did not track when a defendant has failed to appear, but he explained: "Basically we keep in contact about bail payments . . . [b]ut . . . unless I receive a notice of forfeiture, I consider them to be a reliable defendant."

At the conclusion of the hearing, the court said: "Unfortunately, you know, it does come down to a question of credibility. How do we know that perhaps the mail service—the mailman screwed up and sent the notice someplace else. That's a possibility. *But under the statute, the presumption is that the clerk mailed it, you received it. So I'm*

8

*going to have to stand with my tentative and deny the motion.*"  (Italics added.)  Surety appealed from the April 3, 2015, order denying its motion to set aside the summary judgment on the bail bond, discharge the forfeiture, and exonerate the bail.

IV.  DISCUSSION

A.  *Surety's Motion to Vacate the Summary Judgment Was Properly Denied*

Surety claims its motion to vacate the summary judgment was erroneously denied because the court *conclusively* presumed, based on Evidence Code sections 641 and 664, that the clerk mailed the notice of forfeiture to Garcia and that Garcia received it.  Thus, Surety argues, the court "completely disregarded" Garcia's declaration and testimony at the hearing that he did not receive the notice, and erroneously failed to consider the inference, arising from Garcia's statements, that the clerk *did not* mail the notice to Garcia.  (Pen. Code, § 1305, subd. (b).)  As indicated, this claim is based on a misinterpretation of the court's comments at the April 3 hearing on Surety's motion.  The court's comments as a whole show that the court did not misapply Evidence Code sections 641 and 664, and did not fail to consider Garcia's claim that he did not receive the notice and the inference it supported—that the clerk did not mail the notice to Garcia.

First, and as the trial court noted at the outset of the hearing, Penal Code section 1305, subdivision (b) requires the clerk to mail the notice of forfeiture, but nothing in Penal Code sections 1305 or 1306 requires the People to show the notice was received as a condition to obtaining summary judgment on the bond.  The certificate of mailing was

9

evidence that the notice of forfeiture was mailed.[3]  The certificate of mailing also gave

rise to two evidentiary presumptions:  a presumption *affecting the burden of producing*

*evidence* that the notice *was received* (Evid. Code, § 641 ["A letter correctly addressed

and properly mailed is presumed to have been received in the ordinary course of mail."]);

and a presumption *affecting the burden of proof* that the notice was mailed (Evid. Code,

§ 664 ["It is presumed that official duty has been regularly performed."]).[4]

The effect of a rebuttable presumption affecting the burden of producing evidence,

like the presumption that a letter correctly addressed and properly mailed *has been*

*received* (Evid. Code, § 641), "is to require the trier of fact to assume the existence of the

presumed fact [that the letter has been received] unless and until evidence is introduced

which would support a finding of its nonexistence [that the letter has not been received],

---

[3]  A clerk's certificate of mailing under Penal Code section 1305, subdivision (b), "'has the same force and effect as [the clerk's] affidavit'" and, as such, has "the same evidential status as a testimonial statement sworn under oath."  (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 968-969 (*Safety National*), quoting Code Civ. Proc., § 2015.3.)

[4]  Evidence Code section 641 is part of article 3 of chapter 3 of the Evidence Code, which, beginning at Evidence Code section 630, lists "[p]resumptions affecting the burden of producing evidence."  Evidence Code section 630 states:  "The presumptions established by this article . . . are presumptions affecting the burden of producing evidence."  Evidence Code section 664, by contrast, creates a presumption affecting the burden of proof.  It is part of article 4 of chapter 3 of the Evidence Code, which, beginning at section 660, lists presumptions affecting the burden of proof.  Evidence Code section 660 states:  "The presumptions established by this article . . . are presumptions affecting the burden of proof."  (Evid. Code, § 601 states:  "A presumption is either conclusive or rebuttable.  Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof.")

in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and *without regard to the presumption.*" (Evid. Code, § 604, italics added.)

Thus, and as Surety correctly points out, the rebuttable presumption that a letter correctly addressed and properly mailed has been received (Evid. Code, § 641) "disappears" and "has no further effect," once there is evidence sufficient to support a finding that the letter was not mailed. (Evid. Code, § 604; *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1209-1210.) At that point, the trier of fact must "'weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received.'" (*Coffey v. Shiomoto*, *supra*, at p. 1210, quoting Assem. Com. on Judiciary com., reprinted at 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 604, p. 59.)

By contrast, the effect of a rebuttable presumption *affecting the burden of proof*, including the presumption that an official duty has been performed (Evid. Code, § 664), is to "impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718.) Thus, Evidence Code section 664 shifted the burden of proof to Surety to show that the clerk did not mail the letter.

Surety's claim that the court misapplied Evidence Code sections 641 and 664 by conclusively presuming that the clerk mailed the notice of forfeiture (Evid. Code, § 664) and that Garcia received the notice in the mail (Evid. Code, § 641) is based on the court's

11

comments at the conclusion of the hearing.  The court said:  "[U]nder the statute, the presumption is that the clerk mailed it, you received it.  So I'm going to have to stand with my tentative and deny the motion."  But at the outset of the hearing the court said: "Evidence Code section 641 creates a *rebuttable presumption* that a properly addressed letter has been received"; that "Penal Code section 1305 requires mailing, not actual receipt"; and "there is a presumption that government employees are performing their duty," that is, it was Surety's burden to prove that the clerk did not mail the notice. (Italics added.)  (Evid. Code, § 664.)  The court's comments at the outset of the hearing show that it did not conclusively presume that the clerk mailed the notice.

Additionally, at the conclusion of the hearing, the court observed that: "Unfortunately, . . . it does come down to a question of credibility.  How do we know that perhaps . . . the mailman screwed up and sent the notice someplace else[?]  That's a possibility."  These comments plainly show that the court did not disregard Garcia's sworn statements that he did not receive the notice.

In sum, the record shows that the court properly weighed the conflicting evidence on the question of whether the clerk mailed the notice, and properly concluded, based on substantial evidence, including the certificate of mailing, that the clerk mailed the notice. That is, the court reasonably concluded that Garcia's sworn statements that he did not receive the notice were insufficient to meet Surety's burden of proof, under Evidence Code section 664, that the clerk did not mail the notice—even if Garcia's sworn

12

statements met Surety's burden of producing evidence, under Evidence Code section 641, that Garcia did not receive the notice in the mail.

This court's decision in *Safety National*, *supra*, 186 Cal.App.4th at pages 972 and 973 is closely analogous. There, we rejected the surety's claim that the trial court erroneously denied the surety's motion to vacate the forfeiture and exonerate the bond. Similar to Surety's claim here, the surety in *Safety National* claimed it "produced evidence that it had not received the notice of forfeiture, which in turn rebutted any presumption that the notice had in fact been mailed." (*Id.* at p. 972.) In rejecting this claim, we explained: "The clerk issued a certificate of mailing that substantially complied with the requirements of Penal Code section 1305, subdivision (b) . . . . There is a presumption that an official duty has been regularly performed. (Evid. Code, § 664.) The surety's evidence was insufficient to overcome this presumption. In its original motion to vacate the forfeiture and exonerate the bond, the only contrary evidence presented by the surety was the affidavit of its attorney in fact, that the surety 'through normal business operations, has not, to our knowledge, received a forfeiture for [the] above referenced defendant/bond.' As county counsel pointed out in response, the evidence of nonreceipt was 'minimal,' and did not demonstrate the clerk's failure to mail the notice. . . . At most, the declaration established that the surety had no record it received the notice, but the surety's failure to keep adequate records is not a ground for vacating the forfeiture. In addition, the county counsel had itself received a copy of the notice of forfeiture in a timely manner. The trial court made a specific factual finding

13

that the surety 'was notified of bail bond forfeiture.' This was supported by substantial evidence; the trial court did not abuse its discretion in so finding." (*Id*. at pp. 972-973, fns. omitted.)

Here, as in *Safety National*, the certificate of mailing showed that the clerk mailed the notice of forfeiture to the surety and the bail agent, that is, to Surety and Garcia. (§ 1305, subd. (b).) Surety did not claim that it did not receive the notice; it only claimed that Garcia did not receive the notice. This indicated that the notice was probably mailed to both Surety and Garcia as the certificate of mailing showed. Further, Surety, through its counsel, represented at the April 3 hearing that Garcia's landlord had not been delivering his mail. Thus, as in *Safety National*, the trial court did not abuse its discretion in finding, and substantial evidence shows, that the clerk mailed the notice to Garcia. (*Safety National*, *supra*, 186 Cal.App.4th at p. 973.) The court reasonably determined that Surety did not meet its burden of proving, or of persuading the court, that the notice was not mailed to Garcia in the face of the certificate of mailing and the other evidence that the notice was mailed to Garcia.

We disagree with Surety's argument that *Safety National* is distinguishable because the surety relied on its attorney's "hearsay affidavit" to support its claim that it did not receive the notice of forfeiture. Garcia's sworn statements that he did not receive the notice, though based on his personal knowledge, were no more persuasive that the attorney's affidavit in *Safety National* that the surety had no record of having received the notice. (*Safety National*, *supra*, 186 Cal.App.4th at p. 973.) Further, this court treated

14

the attorney's affidavit in *Safety National* as a competent, sworn statement, but it made a weak or "minimal" showing. (*Id*. at p. 973 & fn. 6.)

B. *The Trial Court Properly Declined to Vacate the Summary Judgment Based on the "Extrinsic Mistake" That the Notice of Forfeiture Was Not Delivered to Garcia*

Lastly, Surety argues the trial court should have granted its alternative request to grant Surety equitable relief and vacate the summary judgment based on the "extrinsic mistake" that the notice of forfeiture was not delivered to Garcia. This claim bears little discussion. Plainly, the doctrine of extrinsic mistake does not apply.

The doctrine of extrinsic mistake was aptly summarized in *Lee v. An* (2008) 168 Cal.App.4th 558 at page 566: "[A] trial court retains discretion to *vacate a default* on equitable grounds, even if statutory relief is unavailable. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 . . . .) 'One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' (*Ibid*.) But for a party to qualify for such equitable relief on this basis, courts have developed a three-part test: first, the defaulted party must demonstrate it has a meritorious case; second, it must articulate a satisfactory excuse for not presenting a defense to the original action; and third, the moving party must demonstrate diligence in seeking to set aside the default once it was discovered. [Citation.]" (Italics added.) Here, Surety's motion to vacate the summary judgment was heard on its merits, and Surety did not demonstrate that it had a meritorious case. There was no "default" or default judgment to set aside on the basis of extrinsic mistake.

Nonetheless, Surety claims the "extrinsic mistake" was that Garcia did not receive the notice of forfeiture because it may have been lost in the mail or delivered to the wrong address. But Surety was not entitled to vacate the summary judgment on the ground that *Garcia did not receive the notice*. (§ 1305, subd. (b).) Thus, it is of no moment whether the notice was lost in the mail, or why Garcia did not receive the notice, if, in fact, Garcia did not receive the notice. Garcia's claim that he never received the notice was only relevant to show that the clerk did not mail the notice.

## V. DISPOSITION

The order denying Surety's motion to vacate the summary judgment on bail bond No. U25-20491367 is affirmed. The People shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.


We concur:

HOLLENHORST

J.

SLOUGH

J.

16