[No. B184871. Second Dist., Div. Seven. June 25, 2007.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. AMERICAN CONTRACTORS INDEMNITY COMPANY, Defendant and Appellant.

COUNSEL

Nunez & Bernstein and E. Allen Nunez for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Brian T. Chu, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—Penal Code section 1305, subdivision (g) provides a means for exonerating the bail of a fleeing defendant if the bail bond agency locates the defendant in another jurisdiction and brings him before a local law enforcement officer but the district attorney elects not to seek the defendant's extradition. The question in this case is whether the bonding company satisfied the statutory requirements for exonerating the bail of a defendant nabbed by a bail agent in Mexico. We conclude it did and reverse the judgment forfeiting bail.

## FACTS AND PROCEEDINGS BELOW

A criminal defendant, Hanoch Ambramson, failed to appear at a court hearing and the court ordered forfeiture of the $30,000 bond issued by American Contractors Indemnity Company (American). The County of Los Angeles (County) brought a motion for summary judgment on the bond.

Within the time permitted by law American moved to vacate the forfeiture and exonerate the bond under Penal Code section 1305, subdivision (g)[1] which states: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

---

[1] Future references to "section 1305(g)" or "subdivision (g)" are references to Penal Code section 1305, subdivision (g).

In support of its motion American produced an affidavit by Señor Ricardo Camacho Mondragon, who gave his title as Zone Coordinator of the State Ministerial Police, State of Guerrero, Mexico. The affidavit was written on the letterhead of the Justice Department of the State of Guerrero. In it Mondragon declared: "I certify under penalty of perjury that Mr. Hanoch Abramson[2] is in my presence temporarily detained by Ms. Connie Elizabeth Watson, Bail Agent of the State of California. I have identified positively Mr. Hanoch Abramson as the wanted defendant with a driver's license issued by the State of California number . . . ." The statement was accompanied by a photograph of an adult male with the name Hanoch Abramson handwritten next to the photograph. Below the name was the seal of the United States of Mexico followed by the name of the State of Guerrero and the title of Mondragon's office. Although Mondragon signed his statement "under penalty of perjury" he did not add the words "under the laws of the State of California."[3]

American also submitted the declaration of Connie Watson, the bail agent who found Ambramson in Acapulco. Watson stated on May 5, 2005, she "temporarily detained" Ambramson and brought him to "the presence of Ricardo Camacho Mondragon, Zone Coordinator of the Sector Renacimiento in the City of Acapulco, Guerrero, Mexico." Finally, bail agent Steve Watson represented to the court he contacted Deputy District Attorney Brenda English, informed her where Ambramson could be found, and English informed him her office had elected not to seek extradition.

The trial court struck the declarations of Mondragon and Watson as "hearsay," citing Evidence Code section 1454,[4] denied American's motion to exonerate the bond and granted the County's motion for summary judgment.

## DISCUSSION

### I. *THE HISTORY AND PURPOSE OF SECTION 1305(G).*

Subdivision (g) was added to section 1305 in 1995.[5] Prior to the adoption of subdivision (g) the bail of a defendant who had fled California could be

---

[2] The court's minute orders spell the defendant's name Ambramson but the bail bond is in the name Abramson. The County, however, does not deny the man apprehended is the defendant whose bail is at issue in this case.

[3] See Code of Civil Procedure section 2015.5 and discussion below.

[4] As discussed below, Evidence Code section 1454 deals with the authentication of signatures of officials in foreign nations.

[5] Senate Bill No. 1245 (1995–1996 Reg. Sess.) section 1.

exonerated if the defendant was taken into custody in a foreign jurisdiction and the prosecutor in California elected not to seek extradition.[6] Often, however, absconding defendants could live freely in other states and countries because they had committed no crimes in those jurisdictions and the California prosecutors had not put warrants for their arrest into the nationwide or international warrant system. Bail agents had little incentive to hunt for these bail jumpers because, as the Assembly Committee on Public Safety explained in its analysis of subdivision (g), "[i]f the defendant is then located out of state, but is not in custody, and the district attorney chooses not to extradite, the bond will not be vacated."[7] Furthermore, if the bail agent attempted to arrest the defendant and return him to California "he [risked] kidnaping charges in the other state, on a case in which the district attorney has decided not to pursue prosecution."[8] The Assembly Committee report concluded "[i]f a bail agent cannot be assured that once he has located the defendant, bail will be exonerated," even if the district attorney chooses not to seek extradition, "it is not economically feasible for him to invest the considerable funds necessary to locate these fugitives."[9]

The Legislature intended to eliminate this anomaly in the law by adding subdivision (g) to the bail exoneration provisions of Penal Code section 1305. As explained in the Assembly Report, subdivision (g) "would allow for return of the bond when the defendant is not in custody, but is positively identified in an affidavit signed under penalty of perjury by an authorized peace officer of the jurisdiction in which the defendant is located, the district attorney is informed of the location of the defendant, and the district attorney elects not to seek extradition."[10]

■ In addressing the question whether the bonding company in this case met the requirements for exoneration of Ambramson's bail we bear in mind "[t]he law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail."[11] Thus, section 1305(g) " 'must be strictly construed in

---

[6] Penal Code section 1305, subdivision (f).

[7] Assembly Committee on Public Safety, Report on Senate Bill No. 1245 (1995–1996 Reg. Sess.) as amended June 19, 1995, page 3. (Hereafter Assembly Report.)

[8] Assembly Report, *supra,* at page 5.

[9] Assembly Report, *supra,* at page 5.

[10] Assembly Report, *supra,* at page 3.

[11] *People v. Surety Insurance Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385].

favor of the surety to avoid the harsh results of a forfeiture.' "[12] In adopting a rule of strict construction the courts' concern is not so much for the bail bond companies, to whom forfeiture is an everyday risk of doing business, but for those who bear the ultimate weight of the forfeiture, family members and friends who have pledged their homes and other financial assets to the bonding companies to secure the defendant's release.[13] There is a public interest at stake here as well—the return of fleeing defendants to face trial and punishment if found guilty. Given the limited resources of law enforcement agencies, it is bail bond companies, as a practical matter, who are most involved in looking for fugitives from justice. As the Assembly Report points out, if the bonding company has no assurance that once it has located the absconding defendant its bail will be exonerated even if the prosecutor elects not to extradite the defendant the company has no financial incentive to undertake the search.

With these considerations in mind we examine the requirements of section 1305(g).

## II. *MONDRAGON'S DECLARATION WAS NOT HEARSAY AND DID NOT HAVE TO BE TAKEN BEFORE OR AUTHENTICATED BY A UNITED STATES FOREIGN SERVICE OFFICER IN MEXICO.*

The County contends the judgment denying exoneration of bail should be affirmed because American failed to meet the requirements of section 1305(g). In particular it contends Mondragon's affidavit was not admissible to prove he was a law enforcement officer or that he had positively identified the person being temporarily detained by bail agent Watson as Hanoch Ambramson because the affidavit was not made under penalty of perjury "under the laws of the State of California";[14] it was not authenticated by a member of the United

---

[12] *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].

[13] *County of Los Angeles v. Surety Ins. Co., supra,* 162 Cal.App.3d at page 62.

[14] Code of Civil Procedure section 2015.5 requires that an affidavit executed outside California recite it is declared to be true under penalty of perjury "under the laws of the State of California." An out-of-state affidavit which does not contain the "laws of California" language is not admissible as evidence in a California court. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 618 [15 Cal.Rptr.3d 793, 93 P.3d 386].)

States foreign service stationed in Mexico;[15] and it was not sworn before a consular officer of the United States or a Mexican judge.[16]

The County's argument rests on the faulty premise Mondragon's affidavit was hearsay and could only be introduced into evidence if it met the technical requirements referred to above for a declaration executed in a foreign country.[17]

 Hearsay, of course, is evidence of a declarant's out-of-court statement offered to prove the truth of the matter stated.[18] The hearsay rule does not apply to a declarant's written statement when the fact in issue is whether certain things are contained in the statement, as opposed to whether the things contained in the statement are true.[19]

Mondragon's affidavit was not prepared for use at a court hearing to prove the truth of the matters asserted—that Mondragon was a law enforcement officer of the State of Guerrero and he had positively identified the person

---

[15] Evidence Code section 1454 states in relevant part: "A signature is presumed to be genuine and authorized if it purports to be the signature, affixed in his official capacity, of an officer, or deputy of an officer, of a nation or public entity in a nation recognized by the executive power of the United States and the writing to which the signature is affixed is accompanied by a final statement certifying the genuineness of the signature and the official position of (a) the person who executed the writing or (b) any foreign official who has certified either the genuineness of the signature and official position of the person executing the writing or the genuineness of the signature and official position of another foreign official who has executed a similar ce[r]tificate in a chain of such certificates beginning with a certificate of the genuineness of the signature and official position of the person executing the writing. The final statement may be made only by a secretary of an embassy or legation, consul general, consul, vice consul, consular agent, or other officer in the foreign service of the United States stationed in the nation, authenticated by the seal of his office." The California Law Revision Commission notes this statute replaces the *"complex* procedure" for authenticating foreign official writings contained in former Code of Civil Procedure section 1918. (Recommendation Proposing An Evidence Code (1965) 7 Cal. Law Review Com. Rep. 1, 276 (italics added).)

[16] An affidavit is "a written declaration under oath" (Code Civ. Proc., § 2003) taken before "any officer authorized to administer oaths" (Code Civ. Proc., § 2012) including certain foreign service officers of the United States (Code Civ. Proc., § 2014). Code of Civil Procedure section 2014 states: "An affidavit taken in a foreign country to be used in this State, may be taken before an Embassador, Minister, Consul, Vice Consul, or Consular Agent of the United States, or before any Judge of a Court of record having a seal in such foreign country."

[17] The County does not attempt to justify the trial court's striking of Connie Watson's declaration as hearsay. Declarations are hearsay but they are admissible in a hearing on a motion if they are in proper form as was Watson's. (*Kulshrestha v. First Union Commercial Corp., supra,* 33 Cal.4th at pp. 609–610.)

[18] Evidence Code section 1200.

[19] *Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 863 [24 Cal.Rptr.3d 427].

being temporarily detained in his presence as Hanoch Ambramson. Rather, the affidavit was prepared in order to meet the requirement of section 1305(g) that the bail agent informed the district attorney "of the location of the defendant." When the district attorney elected not to seek Ambramson's extradition the affidavit was offered into evidence at the bail exoneration hearing to show American had met certain requirements of section 1305(g). It showed Mondragon was a law enforcement officer of the State of Guerrero; it stated Mondragon had positively identified Ambramson as the man temporarily detained in his presence by bail agent Watson; and it was signed under penalty of perjury.

Thus, although Mondragon's affidavit ended up being offered as evidence in support of American's motion to exonerate bail its relevance was not as evidence of the truth of the matters stated in the affidavit but as evidence the district attorney had elected not to seek extradition "after being informed of the location of the defendant."

There are practical reasons why the Legislature drafted section 1305(g) the way it did. The Legislature "intended the statute to have a global reach"[20] and undoubtedly knew requiring a bail agent in a foreign country to comply with the kind of technicalities cited by the County would result in few if any bail jumpers ever being returned to California to face trial.

Hunting for defendants who have jumped bail is a time-consuming and often dangerous job. Bail agents looking for absconding defendants do not go with a lawyer in tow to advise them on the technicalities of California law. This is why the Legislature only required the bail agent to temporarily detain the defendant and bring him before a local law enforcement officer to determine his identity and find out whether the prosecutor in California will seek the defendant's extradition. Under the County's interpretation of the statute the bail agent would have to get the law enforcement officer to go with him to find a local judge willing to take the officer's sworn affidavit.[21] The bail agent would then have to take the law enforcement officer before a United States consular official who can certify the genuineness of the law enforcement officer's signature on the affidavit or who can certify the genuineness of the signature of some other foreign official who certified the genuineness of the law enforcement officer's signature.[22] In the present case this means Watson would have had to bring Mondragon before a local judge

---

[20] *County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 800 [71 Cal.Rptr.2d 811] (citing legislative history of section 1305(g)).

[21] Code of Civil Procedure section 2014, quoted in footnote 16, *ante.*

[22] Evidence Code section 1454, quoted in footnote 15, *ante.*

who would take his sworn affidavit. She then would have had to get Mondragon to agree to leave his duties in Acapulco and travel 250 miles to Mexico City, the location of the nearest United States consular office, to obtain a certificate attesting to the genuineness of Mondragon's signature on the affidavit. If Ambramson had been found in Cabo San Lucas instead of Acapulco the bail agent would have had to bring the local law enforcement officer before a United States consular official in Tijuana, more than 1000 miles from Cabo San Lucas. Plainly, the chances of a local law enforcement officer agreeing to comply with this burdensome procedure are between slim and none.

We conclude, therefore, the trial court's rejection of Mondragon's and Connie Watson's affidavits was prejudicial error because it prevented American from making the necessary showing for exoneration of its bond under section 1305(g).

The County argues there was insufficient evidence the district attorney elected not to seek extradition of Ambramson because bail agent Steve Watson did not make his representation of this fact in the form of a declaration. We reject this argument. Nowhere in the record or in its brief on appeal has the County disputed Watson's representation the district attorney elected not to seek extradition. Furthermore, Deputy District Attorney English, who allegedly advised Watson her office would not seek extradition, was present in court representing the County in opposition to American's motion for relief from forfeiture. It is fair to assume that if English disagreed with Watson's statement she would have said so.

■ The undisputed admissible evidence shows American complied with the requirements of section 1305(g) and the district attorney elected not to seek Ambramson's extradition. Under these circumstances the trial court "shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."[23] Accordingly, we will reverse the trial court's judgment for the County and its order denying American's motion to exonerate bail and remand the cause to the trial court with directions to deny the County's motion for summary judgment on the bond and grant American's motion to vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release.

---

[23] Section 1305(g).

## DISPOSITION

The judgment for the County and the order denying American's motion to vacate the forfeiture and exonerate bail are reversed and the cause is remanded to the trial court with directions to deny the County's motion for summary judgment and grant American's motion to vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release.

Appellant is awarded its costs on appeal.

Perluss, P. J., and Zelon, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 25, 2007, S155292.