Filed 4/15/13  P. v. International Fidelity Ins. Co. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>INTERNATIONAL FIDELITY<br>INSURANCE COMPANY,<br><br>        Defendant and Appellant. | A132833<br><br>(San Francisco County<br>  Super. Ct. Nos. 2406584, 2406585) |

In this appeal, defendant International Fidelity Insurance Company (International Fidelity), challenges the trial court's denial of its motion brought pursuant to Penal Code section 1305, subdivision (g), to vacate a forfeiture of bail.[1]  We conclude that International Fidelity failed to prove, as required by section 1305, subdivision (g), that the San Francisco District Attorney's Office refused to extradite two fugitives, who failed to appear in court and fled the country to Italy, after the fugitives were temporarily detained and identified by a local law enforcement agent.  We therefore affirm the judgment.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

In February and March of 2009, defendant International Fidelity issued two separate bail bonds, each in the amount of $250,000, for the release of Kip and Nicole Macy, husband and wife, who had been arrested and charged with various felonies.  The Macys failed to appear in court as ordered on June 4, 2010.  The court ordered forfeiture

---

[1] All further statutory references are to the Penal Code.

of their bails and issued bench warrants. The notice of forfeiture was mailed to defendant on June 23, 2010.

Defendant thereafter engaged in efforts, through its bail agent Geri Campana, to locate the Macys, who were traced to Europe. Defendant presented evidence in the form of Campana's declaration that in October of 2010, the San Francisco District Attorney's (SFDA) office expressed unwillingness to sign an agreement to extradite the Macys due to the associated prohibitive costs. Without the cooperation of the SFDA's office, defendant was unable to obtain an "Interpol Red Notice," or enlist the assistance of the U.S. Attorney, the State Department, or foreign local law enforcement agencies, to detain and extradite the Macys.

An extension of the 180-day time limit to seek relief from forfeiture of bail (§ 1305.4) was granted in January of 2011. By March of 2011, through an investigation by Campana the Macys were ultimately located in Florence, Italy. Campana also declared that on March 23, 2011, a deputy in the SFDA's office confirmed that extradition of the Macys would not be sought.

On March 30, 2011, the Macys were contacted by Campana and another bail agent Ron Lee, and escorted to a police station in Florence, Italy. Local authorities refused to take them into custody. The American Embassy and the FBI also declined to detain the fugitives "due to the lack of Interpol Red Notice." In early April, Campana notified the SFDA's office that the Macys had been temporarily detained, but was again advised that "they would not elect extradition due to the cost." Campana and Lee then returned to San Francisco.

On April 26, 2011, Campana returned to Florence. Two days later she and a local law enforcement officer met with the Macys to sign an "ID Affidavit, finger print and photograph the fugitives." Campana contacted her attorney to notify the SFDA's office of the detention of the Macys, then returned to the United States. Her declaration further states: "I understand SFDA's position has not changed. They do not wish to extradite. They do not seek extradition."

2

On May 31, 2011, defendant filed a motion to vacate forfeiture and for exoneration of bail pursuant to section 1305, subdivision (g), which was accompanied by the bail agent's supporting declaration. In opposition to the motion, the city attorney asserted that the prosecuting agency had "elected to extradite the defendant Kip Macy from Italy." The attached declaration of the deputy city attorney assigned to "bail forfeiture matters," Leonor Noguez, stated that someone from the SFDA's office informed her by phone "that their office decided to extradite the defendant, Kip Macy from Italy." The declaration added that "a representative from the District Attorney's Office would be present in court at the hearing of this matter on June 15, 2011, to make that representation to the Court."

At the hearing on the motion to vacate the bail forfeiture, the deputy district attorney represented that upon consideration of information received from the Department of Justice "indicating the cost" and necessary procedures, the "People's position has changed," and "we have elected to proceed to extradition." Defendant argued in response that the elements of section 1305, subdivision (g), had already been satisfied, and plaintiff's belated decision to extradite defendants did not warrant denial of relief. The trial court denied the motion, based on a finding that under section 1305, subdivision (g), the SFDA's office was not "bound" to its prior refusal to extradite, and in response to the motion was entitled to "say we are going to extradite them."

## DISCUSSION

Defendant argues that the bail agent "complied with all of the terms of . . . Penal Code section 1305(g) which allows for exoneration if the terms are met and the prosecuting agency declines to seek extradition." Defendant maintains that the prosecution failed to present admissible evidence of an election by the SFDA's office to extradite, and in any event the "right to exoneration was complete when the surety complied with all of the requirements of Section 1305(g)," even if the prosecution subsequently retracted the earlier decision not to extradite the Macys.

***I. The Appealability of the Order Denying the Motion to Vacate Forfeiture of Bail***.

Plaintiff argues that defendant surrendered the right to appeal from the denial of the motion to vacate forfeiture by failing to timely file an appeal from the trial court's entry of summary judgments declaring the bonds forfeited on August 1, 2011. Plaintiff acknowledges the orders denying the "motions to vacate forfeiture and the summary judgments entered after forfeiture are separately appealable orders," but claims that due to defendant's failure to "file[] a notice of appeal from the summary judgments, they are now final, conclusive and not subject to collateral attack by the present appeal from the court's orders denying [defendant's] motions to vacate the bail forfeitures in these consolidated cases. (See *People v. American Contractors Indemnity Co.* [(2004)] 33 Cal.4th [653,] 660.)"

We agree with plaintiff that when the surety fails to vacate a forfeiture of a bond by the end of the appearance period, "the court is required to enter summary judgment against the surety. (§ 1306, subd. (a).)" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.) Summary judgments in bail bond proceedings "are appealable where 'the judgment was not entered in accordance with the consent given in the undertaking.' [Citations.]" (*Id.* at p. 664.) We also agree that a party is generally prohibited from seeking review from the entry of summary judgment by its failure to file an appeal within the prescribed time limits. (See *Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1107; *Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1573.)[2]

However, a summary judgment entered in accordance with the terms of consent given in the bond is not appealable, although the judgment, a final determination of the rights of the parties, is considered appealable. (See *County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542, fn. 2 (*County of Los Angeles*); *People*

---

[2] A notice of appeal from a judgment must be filed on or before the earliest of (1) 60 days after the trial court's mailing of the notice of entry of judgment; (2) 60 days after a party's service of the notice of entry of judgment; or (3) 180 days after entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1).) Defendant did not file an appeal from the entry of summary judgment within the time limits specified by rule 8.104.

*v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 151, fn. 5; *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 60.)[3] More importantly, a ruling on the motion to vacate the forfeiture is an entirely separate order, separately appealable in its own right. (See *People v. Indiana Lumbermens Mutual Ins. Co.* (2012) 202 Cal.App.4th 1541, 1543, fn. 1; *County of Los Angeles, supra,* at p. 542; *People v. Ranger Ins. Co., supra,* 51 Cal.App.4th 1379, 1382.) Defendant may not be entitled to set aside the summary judgment by collateral attack once it is final (*People v. American Contractors Indemnity Co., supra*, 33 Cal.4th 653, 657, 665), but is not precluded from pursuing the present timely appeal from the ruling on the separate motion to vacate the forfeiture. We turn to the merits of the appeal.

## II. *The Admission of Evidence that the Prosecution Decided to Extradite the Macys*.

The focus of our attention is on the statutory scheme governing bail forfeitures, which is " 'found in Penal Code section 1305 et seq. These provisions must be carefully followed by the trial court, or its acts will be considered without or in excess of its jurisdiction. [Citation.]' [Citation.] [¶] In interpreting these statutes, we must bear in mind that ' "[t]he law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306 dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." ' [Citation.]" (*People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712, 717; see also *People v. Accredited Surety & Casualty Co.* (2012) 209 Cal.App.4th 617, 621.)

Section 1305 describes a number of circumstances under which forfeiture of a bond may be set aside or vacated and the bond exonerated. (*People v. Accredited Surety & Casualty Co.* (2004) 132 Cal.App.4th 1134, 1138–1139.) Specifically, section 1305, subdivision (g), applies where, as here, the "criminal defendant has fled to a foreign country but is not in custody." (*People v. Western Ins. Co.* (2012) 204 Cal.App.4th 1025,

---

[3] Conversely, " 'a summary judgment not entered in accordance with the consent given in the bond is appealable.' " (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 582, 585–586, quoting *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382–1383.)

1030.)  The statute provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, *and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant*, the court shall vacate the forfeiture and exonerate the bond . . . ."  (Italics added.)

The record demonstrates that the bail agent for International Fidelity temporarily detained the Macys in the presence of a local law enforcement officer of the jurisdiction in which they were located, and they were positively identified by that law enforcement officer as the wanted defendants in an affidavit signed under penalty of perjury on April 28, 2011.  The crucial remaining issue in the case, as the trial court recognized, is whether the prosecuting agency elected not to seek extradition of the Macys, as section 1305, subdivision (g), also requires for forfeiture of a bond to be set aside or vacated. The bail agent's declaration indicates that the SFDA's office repeatedly declined to extradite the Macys while they were fugitives.  Defendant claims the court considered inadmissible evidence of a change in the position of the prosecuting agency, presented in response to the motion to vacate the bail forfeiture, to ultimately elect to extradite the Macys.  International Fidelity points out that the only evidence of the prosecuting agency's decision to extradite consisted of the "unsworn, and unknowing, statements of counsel" made orally at the June 15, 2011 motion hearing, which should have been "stricken from the record" upon objection by its counsel.

California Rules of Court, rule 3.1306 specifies that evidence received at a "law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown," and a "party seeking permission to introduce oral evidence, except for oral evidence in rebuttal to oral evidence presented by the other party, must file, no later than three court days before the hearing, a written statement stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing."  (See also *Doe*

6

*v. United States Swimming, Inc*. (2011) 200 Cal.App.4th 1424, 1436.) Under rule 3.1306 the trial court is empowered to determine motions upon affidavits alone, and has the discretion to grant or refuse oral testimony. (*Doe, supra,* at p. 1436; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1499; *Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1160.) We believe the city attorney, in an effort to comply with California Rules of Court, rule 3.1306, should have filed appropriate declarations from the district attorney affirming their desire to extradite the fugitives. It is professionally inexcusable to refrain from including this documentation. We would expect the office of the city attorney to comply with the approved procedures of good law and motion practice.

Section 1305 provides the specific and exclusive statutory procedures that govern the forfeiture and exoneration of bail; the specified procedures set forth in these provisions are jurisdictional and must be strictly followed or the court acts without or in excess of its jurisdiction. (*People v. Ranger Ins. Co*. (1999) 76 Cal.App.4th 326, 328–329; *County of Los Angeles v. Ranger Ins. Co*. (1999) 70 Cal.App.4th 10, 16; *People v. Topa Ins. Co*. (1995) 32 Cal.App.4th 296, 300.) Subdivision (g) of the statute does not delineate any procedural provisions governing notice, service of a motion or the right to a hearing and to present evidence with respect to setting aside the forfeiture when a defendant is not in custody and the prosecuting attorney elects not to extradite. (See *People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1043.) Subdivision (g) sets forth a more informal procedure; it merely provides that an affidavit supporting exoneration of forfeiture must be "signed under penalty of perjury," and under section 1305 the burden is placed on the bonding company to establish the elements of exoneration by "competent evidence" that its case falls within the four corners of the enumerated statutory requirements. (*People v. American Bankers Ins. Co*. (1992) 4 Cal.App.4th 348, 354; *People v. United Bonding Ins. Co*. (1970) 12 Cal.App.3d 349, 353.)

Nothing in section 1305 prevents the trial court from considering oral testimony in support of or in opposition to a motion to vacate forfeiture of bail. In any event, the plaintiff also submitted a declaration of a deputy city attorney assigned to bail forfeiture

7

cases that she had been informed by the SFDA's office of the decision to extradite the Macys. According to the declaration, a representative from the SFDA's office would appear in court at the hearing to affirm the decision to extradite. Thus, in accordance with rule 3.1306, before the hearing the prosecution filed a written statement stating the nature and extent of the oral evidence proposed to be introduced. The evidence contained in the declaration and presented at the hearing, while hearsay, was competent and admissible. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 609– 610; *Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 863.) The hearsay rule does not preclude admission of statements made in a declaration in proper form when the declaration is not offered for the truth of the matter asserted, but rather to establish that the statutory requirements of section 1305 have been met. (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 970–971; *County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 667–669.) We also conclude that the trial court properly exercised discretion to admit the oral statements. Good cause existed to consider the statements, which were derived from a reliable source and offered to clarify the SFDA's office's decision on extradition.

### III. The Trial Court's Finding that the Surety Failed to Comply with the Requirements of Section 1305, Subdivision (g).

International Fidelity also challenges the trial court's finding that the requirements of section 1305, subdivision (g), were not satisfied. Defendant argues that under section 1305, subdivision (g), a surety is entitled to relief as soon as the fugitive is detained and identified by a local law enforcement officer as the wanted defendant, as the affidavit signed under penalty of perjury by the bail agent proved in the present case. Defendant asserts that "the prosecuting agency confirmed that they still would not extradite" the Macys, so the "surety was entitled to relief" under section 1305, subdivision (g). The "right to exoneration was complete" and unalterable, maintains defendant, "when the surety complied with all the requirements of Section 1305(g)." Defendant adds that the "last minute change of heart" by the SFDA's office at the hearing on the motion to vacate the bond forfeiture does not defeat the surety's right to relief.

8

We find that defendant's supporting affidavit did not adequately prove all the elements of section 1305, subdivision (g). The affidavit established that the prosecuting agency repeatedly refused to extradite the Macys *before* compliance with the statutory mandates by defendant. However, section 1305, subdivision (g), expressly provides that the court must vacate the forfeiture and exonerate the bond if the affidavit shows the bail agent has temporarily detained the fugitive in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, the defendant is positively identified by that law enforcement officer as the wanted defendant, "and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant."

We must interpret the meaning of the provision that requires the surety to prove the prosecuting agency elected "not to seek extradition after being informed of the location of the defendant." " 'In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]' [Citation.] ' "We begin by examining the statutory language, giving the words their usual and ordinary meaning." [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " [Citation.]' [Citation.]" (*In re Marriage of Nadkarni, supra,* 173 Cal.App.4th 1483, 1497.)

We must also acknowledge that the law disfavors the forfeiture of bail, which requires that we strictly construe section 1305 dealing with forfeiture of bail bonds in favor of the surety to avoid the harsh results of a forfeiture. (*People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1489–1490; see also *People v. Indiana Lumbermens Mutual Ins. Co*. (2010) 49 Cal.4th 301, 313; *People v. Allegheny Casualty*

*Co*. (2007) 41 Cal.4th 704, 714.) The object of bail and its forfeiture is to insure the defendant's attendance and his or her obedience to the orders and judgment of the court, not to either provide revenue to the state or punish the surety. "Nevertheless, a bail bond is a contract between the government and the surety"; "when this contract is breached, the bond should be enforced." (*People v. Accredited Surety & Casualty Co., supra,* 209 Cal.App.4th 617, 621.) "On appeal, we review the trial court's resolution of a motion to set aside a bail forfeiture under the abuse of discretion standard [citation], subject to the protections afforded by the statutory scheme addressing bail forfeiture [citation]." (*People v. Lexington National Ins. Corp., supra,* at p. 1489.)

As we read the explicit language of section 1305, subdivision (g), the burden is on the surety to prove that *after* the defendant has been detained and identified in an affidavit as specified in the statute, the prosecuting agency expresses an election not to extradite. The Legislature "required the bail agent to temporarily detain the defendant and bring him before a local law enforcement officer to determine his identity *and find out whether the prosecutor in California will seek the defendant's extradition*," as a prerequisite to relief under section 1305, subdivision (g). (*County of Los Angeles v. American Contractors Indemnity Co., supra,* 152 Cal.App.4th 661, 668, italics added.) We think our interpretation not only comports with the plain meaning of the statutory language, but strikes a balance between granting the prosecuting agency the opportunity to determine whether to extradite with firm knowledge of the place and circumstances of the detention – that is, once the bail agent has securely detained and, through a local law enforcement officer, positively identified the fugitive – and avoiding the harsh results of a forfeiture.

Here, the bail agent's affidavit fails to establish that the SFDA's office declined to extradite after being informed the remaining elements of section 1305, subdivision (g) had been satisfied. The affidavit states that on April 28, 2011, the Macys were detained and identified by a local law enforcement officer. The bail agent then contacted defendant's attorney to ask the SFDA's office's "position on extradition." The only other reference to the decision to extradite is the bail agent's statement after her return to San

10

Francisco that, "I understand SFDA's position has not changed. They do not wish to extradite." The bail agent's *understanding* is not an expression by the prosecuting agency of an election not to seek extradition within the meaning of section 1305, subdivision (g). In the absence of evidence of bad faith, proof of the prosecuting agency's refusal to sign an "Interpol Red Notice" or agree to extradite the Macys *before* they were temporarily detained and positively identified by a local law enforcement officer of the jurisdiction does not meet the statutory requirement. Finally, evidence of the decision of the SFDA's office to extradite the Macys once the remaining elements of the statute were satisfied defeats the motion to vacate the forfeiture of bail under section 1305, subdivision (g). We conclude that the trial court properly denied the motion to vacate the forfeiture of bail.

Accordingly, the judgment is affirmed.


_____

Dondero, J.


We concur:


_____

Margulies, Acting P. J.

_____

Banke, J.

11