Filed 4/15/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>EMMANUEL CASTILLOLOPEZ,<br><br>  Defendant and Appellant. | D063394<br><br><br>(Super. Ct. No. SCD242311) |

APPEAL from a judgment of the Superior Court of San Diego County, Albert T. Harutunian III, Judge.  Reversed.

Maureen M. Bodo, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Emmanuel Castillolopez challenges the constitutionality of Penal Code[1] section 16470, which defines a "dirk" or "dagger" as "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." Referring to three specific types of knives, section 16470 also provides that "[a] *nonlocking folding knife*, a folding knife that is not prohibited by Section 21510,[2] or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed *and locked into position*." (Italics added.)

This case arose when a police officer conducted a pat-down search during a traffic stop and found Castillolopez was carrying in a jacket pocket a Swiss Army knife with the blade in the open position. A jury convicted Castillolopez of one count of carrying a concealed dirk or dagger in violation of section 21310.[3] Castillolopez admitted allegations he had suffered both a prior prison conviction (§§ 667.5, subd. (b), 668) and a

---

[1]     Undesignated statutory references will be to the Penal Code.

[2]     Section 21510 prohibits carrying or possessing a switchblade knife with a blade two or more inches in length.

[3]     With exceptions not pertinent here, section 21310 provides: "[A]ny person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

prior "strike"[4] (§§ 667, subds. (b)-(i), 1170.12, 668). The court denied Castillolopez's motion to strike the prior strike allegation under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (hereafter the *Romero* motion). The court then sentenced Castillolopez to the lower state prison term of 16 months doubled to 32 months (two years eight months) under the Three Strikes law as a result of his prior strike, plus a one-year term for the prison prior enhancement, for a total prison term of three years eight months.

Castillolopez contends his conviction of a violation of section 21310 must be reversed because (1) the definition of "dirk" or "dagger" in section 16470 is unconstitutionally vague because it does not define "nonlocking folding knife" or "locked into position," and, thus, section 16470 does not give fair notice of what kind of knife is prohibited and it invites arbitrary enforcement by the police; (2) there was insufficient evidence to support the jury's finding that the Swiss Army knife was a dirk or dagger within the meaning of sections 16470 and 21310 because an unaltered Swiss Army knife like his "can never be locked into position"; and (3) the court committed prejudicial error both when it failed to instruct the jury sua sponte on the meaning of the phrase "locked into position" in section 16470 when it instructed the jury under CALCRIM No. 2501, and when it failed to instruct the jury on the meaning of that phrase in response to the jury's note during deliberations asking for the definition of the phrase. In the alternative,

---

[4] "We use the term 'strike' to describe a prior felony conviction that qualifies a defendant for the increased punishment specified in the Three Strikes law." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2.)

3

Castillolopez contends that, if this court does not reverse his conviction, the denial of his *Romero* motion should be reversed and the matter remanded to the trial court with directions to strike his prior strike.

We conclude section 16470 is not unconstitutionally vague, but Castillolopez's conviction of carrying a concealed dirk or dagger in violation of section 21310 must be reversed because there is no substantial evidence to support the jury's findings that the open blade of the Swiss Army knife he was carrying was locked into position within the meaning of section 16470, and, thus, that he violated section 21310 by carrying a concealed dirk or dagger.

## FACTUAL BACKGROUND

A. *The People's Case*

In July 2012 Castillolopez was a passenger in a car stopped by Officer Bryce Charpentier of the San Diego Police Department, who was by himself in a patrol car. Castillolopez's vehicle did not immediately stop and when it eventually did it was bumper-to-bumper facing Officer Charpentier's patrol car.

Officer Charpentier got out of his patrol car, drew his gun, and pointed it at Castillolopez's car, ordering the driver and Castillolopez to show their hands and not make any sudden movements. The driver complied immediately, but Officer Charpentier shouted the commands several times before Castillolopez complied. Castillolopez looked directly at Officer Charpentier, reached around in the car and moved his hands somewhere under the dashboard while maintaining eye contact with Officer Charpentier,

4

and then slowly put his hands up. Officer Charpentier ordered Castillolopez to get out of the car, turn around, and walk backwards. Castillolopez complied.

Officer Charpentier then arrested Castillolopez and conducted a pat-down search of his person. Officer Charpentier testified he took from Castillolopez's front jacket pocket a Swiss Army knife, which he described as a "collapsible knife," the blade of which was "in a locked, open position." Officer Charpentier stated he photographed and impounded the knife.

On cross-examination, Officer Charpentier held the body of the Swiss Army knife in his right hand with the blade in the open position and then closed the knife with his left hand by pushing the blade down into the body of the knife. To close the knife he did not have to push on anything other than the blade.

The People's expert, Cameron Gary—an investigator with the district attorney's office trained in self-defense and weapons—testified he could not remember the exact term used for the type of mechanism Castillolopez's knife has, but the mechanism is a "friction, slash, spring lock." Investigator Gary stated "there is a spring as well as tension from the actual—the body of the—of the handle that holds the blade in place," and "you have to overcome that spring tension and that friction in order to close it back up again. That's what holds it in place." He also stated that the blade would "click into place," making "kind of a clicking sound," when the spring tension was overcome and the blade was opened. He indicated the blade then would be in the "exposed and locked position." He testified the knife can inflict great bodily harm when it is "in a locked open position."

5

Investigator Gary also testified, however, that, although the Swiss Army knife blade can puncture soft material, it cannot easily puncture something hard, like a binder, without collapsing. He described the Swiss Army knife as "more of a tool" than a defensive weapon. He also stated that other tools capable of being used as stabbing instruments include scissors, ballpoint pens, knitting needles, bedsprings, and sharpened plastic combs and toothbrushes.

On cross-examination, Investigator Gary testified that a Swiss Army knife is commonly understood to be a pocketknife or folding blade knife. He opined that the effectiveness of this type of knife as a stabbing instrument is limited because if the blade should hit something hard like a bone, there is a risk it would collapse on the user. He stated he would classify the Swiss Army knife as "more of a tool" and opined it "wouldn't . . . be considered a fighting knife like a stabbing tool."

When asked on cross-examination whether he would describe Castillolopez's Swiss Army knife as a locking blade knife, Investigator Gary replied that that was a difficult question and stated, "I would say that this is a type of locking mechanism. It wouldn't be what I would consider to be the best type of locking mechanism, but . . . some resistance does have to be overcome."

When also asked on cross-examination to define the word "lock," Investigator Gary replied it generally means to make something immovable. He indicated there was nothing on Castillolopez's Swiss Army knife that one must manipulate to either lock the blade in place or unlock it. He also indicated there are some folding knives that have a

6

physical lock which, unlike the "pressure mechanism" on Castillolopez's Swiss Army knife, prevents the blade from moving.

On redirect examination, the prosecutor asked Investigator Gary, "[W]ould you describe this [Swiss Army knife] as a non-locking folding knife?" Investigator Gary began his reply by stating, "I would call this a non-locking fold—," but stopped, and then stated, "[W]ell, I don't know that, you know—and I think the way the law is stated—I understand the words, but there is no folding knife that doesn't lock some way because, otherwise, the blade wouldn't be able to stay in place if you're trying to impale something or to cut it."

B. *The Defense*

Raymond Flores, a sales manager at a uniform store that caters to law enforcement and fire personnel, testified he was familiar with knives because he had been selling them for 14 years. He had met with representatives of manufacturers who described the working mechanisms of their products, and he had attended annual trade shows. Flores recognized Castillolopez's knife as a standard Swiss Army knife. He testified that, in the industry, a Swiss Army knife is considered a multi-tool or a survival tool; it can also be described as a nonlocking folding knife.

Flores indicated that a locking-blade knife is a knife which has a blade that locks into place when it is opened and will not collapse or fold unless a release mechanism is pressed. Thus, something must be done to unlock the blade in order to close a locking-blade knife, which cannot be closed simply by putting pressure on the blade.

7

Flores testified that a Swiss Army knife is not a locking-blade knife because it does not have a device that must be depressed to collapse the knife, and only pressure is needed to close the knife. He indicated that the fact the blade "pops" into place when the knife is opened does not make the Swiss Army knife a locking-blade knife because the blade is mobile even though it pops into place. Flores testified that when the blade of the Swiss Army knife is fully open, the blade can be said to be "locked" in the sense that it is "as open as it's going to get," but "it's not locked."

## DISCUSSION

### I. *VOID-FOR-VAGUENESS CLAIM*

Castillolopez first contends his conviction of carrying a concealed dirk or dagger in violation of section 21310 must be reversed because the definition of dirk or dagger in section 16470 is unconstitutionally vague, both facially and as applied. We reject this contention.

#### A. *Void-For-Vagueness Doctrine*

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of law. This constitutional command requires 'a reasonable degree of certainty in legislation, especially in the criminal law . . . .'" (*People v. Heitzman* (1994) 9 Cal.4th 189, 199 (*Heitzman*), quoting *In re Newbern* (1960) 53 Cal.2d 786, 792.)

Under the void-for-vagueness doctrine, a criminal statute is unconstitutionally vague and void if it defines the offense (1) with insufficient definiteness to provide fair

8

notice to people of ordinary intelligence regarding the kind of conduct prohibited by the statute, and (2) in a manner that encourages arbitrary and discriminatory enforcement. (*Kolender v. Lawson* (1983) 461 U.S. 352, 357; *Heitzman*, *supra*, 9 Cal.4th at p. 199.) Thus, in order for the language of a penal statute to be sufficiently certain to satisfy the requirements of due process, two requirements must be met:  (1) The statutory language "must be definite enough to provide a standard of conduct for those whose activities are proscribed"; and (2) the language "must provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement."  (*Heitzman*, at p. 199.)

However, the California Supreme Court has explained that "[o]nly a reasonable degree of certainty is required," and there is a strong presumption in favor of the constitutionality of a challenged statute.  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1107; see also *People v. Kelly* (1992) 1 Cal.4th 495, 533 ["Due process requires a '"reasonable degree of certainty in legislation, especially in the criminal law . . . ."'"].) Thus, a statute "'"cannot be held void for uncertainty if any reasonable and practical construction can be given to its language."'"  (*Tobe*, at p. 1107.)

The California Supreme Court has also explained that "'[m]any, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear.  So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities . . . do not justify the invalidation of a statute on its face.  In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances

9

in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague in all of its applications."'" (*People v. Kelly, supra*, 1 Cal.4th at pp. 533-534, quoting *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1201.)

B. *Analysis*

As noted, Castillolopez claims the definition of dirk or dagger set forth in section 16470 is unconstitutionally vague. Resolution of this claim necessarily involves statutory interpretation of section 16470, which provides:

> "'[D]irk' or 'dagger' means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A *nonlocking folding knife*, a folding knife that is not prohibited by Section 21510,[5] or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is *exposed* and *locked into position*." (Italics added.)

Castillolopez contends section 16470 is ambiguous because (1) it does not define the word "nonlocking" (in the term "nonlocking folding knife") or the phrase "locked into position" which are used in that section; and (2) "the notion that a 'nonlocking' knife can be 'locked into position' is inherently contradictory" because "[a] knife that is described specifically [in section 16470] as 'nonlocking' is necessarily incapable of locking into position," Thus, he asserts, section 16470 is unconstitutional because it "does not provide fair notice of what kind of knife is prohibited" and it "invites arbitrary enforcement by police" because it "does not provide an adequate standard for police to apply." He also

---

5      As previously noted, section 21510 prohibits carrying or possessing a switchblade knife with a blade two or more inches in length.

asserts that, although section 16470 is ambiguous, the phrase "locked into position" "must mean 'held in place by a locking device or mechanism or altered so as to be immobilized.'"

The Attorney General argues the definition of dirk or dagger in section 16470 "is constitutional because it is not vague or ambiguous, given the extensive evidence of legislative intent and a plain reading of the statutory language." While acknowledging that section 16470 "presents an apparent paradox" by using the term "nonlocking folding knife" and the phrase "locked into position" the Attorney General asserts the apparent paradox is resolved because, "[b]ased on the plain language" of section 16470, the phrase "locked into position" "must mean that the knife blade is *fully open*" (italics added); and, thus, "the statute reasonably defines [a dirk or dagger] as any folding knife, other than a switchblade, [that is] fully fixed into an open position," whether or not the blade "mechanically lock[s] into place." The Attorney General also asserts that "any ambiguity in the statute is clarified by the legislative history [of section 16470]; the statute is intended to prohibit carrying *any folding knives in a fully exposed and open position*" (italics added) because such knives are "capable of immediate use as a stabbing weapon."

As demonstrated by the foregoing contentions of the parties, the principal issue of first impression we must decide in resolving Castillolopez's challenge to the constitutionality of section 16470 is whether the phrase "locked into position" in the definition of dirk or dagger set forth in that section is so ambiguous as to render that statute unconstitutionally vague. The Attorney General correctly points out that, "[a]t trial, [Castillolopez's] conviction turned on the definition of 'locked into position'

11

included in [section 16470]: If the blade of [his Swiss Army] pocketknife was locked into position, he was in clear violation of the statute."

As to the first prong of our inquiry—determining whether the phrase "locked into position" in section 16470 is sufficiently certain to meet the constitutional requirement of fair notice—we look first to the language of the statute, any California decisions construing the challenged statutory language,[6] and, if necessary, the legislative history of the statute. (*Heitzman, supra*, 9 Cal.4th at p. 200.) In making our determination, we are guided by well-established principles of statutory interpretation.

The role of the courts in construing a statute is to "'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" (*People v. Wright* (2006) 40 Cal.4th 81, 92.) "In approaching this task, we must first look at the plain and commonsense meaning of the statute because it is generally the most reliable indicator of legislative intent and purpose. [Citation.] If there is no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said, and we need not resort to legislative history to determine the statute's true meaning." (*People v. Cochran* (2002) 28 Cal.4th 396, 400-401 (*Cochran*).) In other words, if the statutory language is unambiguous "the plain meaning of the statute controls." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009.) Furthermore, "we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute,"' [and w]e must harmonize

---

[6] Here, the parties have cited no decisional authority, and we are aware of none, that construes the meaning of the phrase "locked into position" in the definition of dirk or dagger set forth in section 16470.

12

the 'various parts of [the statute] by considering the particular clause or section in the context of the statutory framework as a whole.'" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "'We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous.'" (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 966, quoting *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22; see also *People v. Kennedy* (2008) 168 Cal.App.4th 1233, 1241 [rejecting an interpretation that would have rendered a statutory provision "meaningless surplusage"]).

The interpretation of a statute and the determination of its constitutionality are questions of law subject to de novo appellate review. (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.)

Here, as previously noted, section 16470—referring to three specific types of knives—provides that "[a] nonlocking folding knife, a folding knife that is not prohibited by Section 21510, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and *locked into position*." (Italics added.)

Looking first at the plain and commonsense meaning of the foregoing statutory language, as we must (*Cochran, supra*, 28 Cal.4th at p. 400), we first determine that, under section 16470, any one of the three types of knives specified therein—a "nonlocking folding knife," a "folding knife" that is not a switchblade prohibited by section 21510, or a "pocketknife"—is *not* "capable of ready use as a stabbing weapon that may inflict great bodily injury or death"—and, therefore, is *not* a "dirk or dagger" within

13

the meaning of section 16470—unless "the blade of the knife is exposed *and locked into position*" (italics added).

As Castillolopez correctly points out, section 16470 does not define the phrase "locked into position." However, the lack of a statutory definition of the phrase "locked into position" in section 16470 does not render unconstitutionally vague the definition of dirk or dagger set forth in that section if the plain and commonsense meaning of the phrase "locked into position" is sufficiently definite to provide fair notice to people of ordinary intelligence as to what that phrase means and, thus, whether a particular knife is a dirk or dagger under that section. (*Kolender v. Lawson*, *supra*, 461 U.S. at p. 357; *Heitzman*, *supra*, 9 Cal.4th at p. 199.) In construing section 16470, including the phrase "locked into position," we are mindful that "[o]nly a reasonable degree of certainty is required," and there is a strong presumption in favor of the constitutionality of that section. (*Tobe v. City of Santa Ana*, *supra*, 9 Cal.4th at p. 1107.)

We conclude the phrase "locked into position," when given its plain and commonsense meaning, is sufficiently definite to provide fair notice to people of ordinary intelligence regarding what constitutes a prohibited dirk or dagger within the meaning of sections 16470 and 21310. Merriam-Webster's Collegiate Dictionary (11th ed. 2006) at page 730 defines the verb "lock" as "to make fast, motionless or inflexible," and at page 455 defines the adjective "fast" in this context as "firmly fixed." The Random House Unabridged Dictionary (2d ed. 1983) at page 1128 similarly defines "lock" as "to make fast or immovable as if by or as if by a lock" and "to make fast or immovable, as by engaging parts" and at page 700 defines "fast" as "firmly fixed in place; not easily

14

moved; securely attached." Merriam-Webster's Collegiate Dictionary, *supra*, at page 621 defines "immovable" as "incapable of being moved."

Given the foregoing standard dictionary definitions of the verb "lock," the phrase "locked into position" in section 16470 plainly connotes physical immobilization or incapability of being physically moved. Thus, we conclude the phrase "locked into position" in section 16470 plainly means "firmly fixed in place or securely attached so as to be immovable." We also conclude the phrase "locked into position," when given its plain and commonsense meaning, is sufficiently definite to provide fair notice to people of ordinary intelligence that in order for a concealed folding knife or pocketknife to be a dirk or dagger within the meaning of sections 16470 and 21310, the blade must be not only exposed, but also firmly fixed in place or securely attached so as to be immovable.

Our interpretation of the definition of dirk or dagger in section 16470 is consistent with the common law definition of dirk or dagger. In *People v. Forrest* (1967) 67 Cal.2d 478, for example, the defendant was convicted of carrying a concealed "dirk or dagger" in violation of former section 12020, the predecessor of section 21310 (see Cal. Law Revision Com. com. & Historical and Statutory Notes, 51D, pt. 3, West's Ann. Pen. Code (2012 ed.) foll. § 21310, p. 79) which Castillolopez was convicted of violating in the instant case. Like section 21310, former section 12020 provided in part that "[a]ny person . . . who carries concealed upon his person any dirk or dagger" was guilty of a crime. (*Forrest*, at p. 479.) The statute, however, did not define a dirk or dagger. (*Ibid*.) The knife at issue in *Forrest* was an oversize pocketknife with two folding blades, the longer of which was six inches long. (*Ibid*.) The California Supreme Court reversed the

15

defendant's conviction, holding that the folding knife in question was not a dirk or dagger as a matter of law. (*Id*. at p. 481.) The Supreme Court reasoned that the knife was not a dirk or dagger because its blade, when opened, did not lock into place: "Although the large blade in the knife involved here is pointed and to a minor extent tapered, the knife folds like a pocketknife, and *the blade of the knife when opened does not lock into place*. This severely limits its effectiveness as a stabbing weapon, because if the blade should hit a hard substance such as a bone, there is grave danger that the blade would close upon the hand of the wielder. This distinguishes it from a dirk or dagger." (*Ibid*.)

Castillolopez contends section 16470 is unconstitutionally vague because "the notion that a 'nonlocking' knife can be 'locked into position' is inherently contradictory." We reject this contention. The term "nonlocking folding knife," although not defined in section 16470, plainly means a knife with a folding blade that, as designed and manufactured, does not lock into position so as to be firmly fixed and immovable when it is in an open position. It is obvious that such a knife could be altered in some manner to firmly fix or fasten the blade in the open position and thereby render the blade immovable. It is equally obvious that the blade of such an altered nonlocking folding knife would be locked into position within the meaning of section 16470, rendering the knife a dirk or dagger because the exposed blade would be fixed and immovable—that, is, "locked"—in the open (or "exposed") position. By virtue of the alteration, the knife—which would still be considered a nonlocking folding knife in that it was originally designed and manufactured to have a nonlocking folding blade—would now have an exposed blade that is locked into position and no longer folds. Simply stated, such a

16

knife would properly be considered a nonlocking folding knife with an exposed blade that is locked into position. Thus, we conclude the term "nonlocking' knife" and the phrase "locked into position" used in section 16470 are not "inherently contradictory," as Castillolopez contends.

In an effort to show section 16470 is unconstitutionally vague, Castillolopez also asserts that "[t]he jury was confused about the meaning of the phrase 'locked into position.'" In support of this assertion, Castillolopez relies on the fact that, after the jury began its deliberations, it sent a note to the court asking for the legal definition of that phrase.[7] By way of background, we note that the court had instructed the jury on section 21310 and the meaning of dirk or dagger under a modified version CALCRIM No. 2501. That instruction stated in part: "A pocketknife, nonlocking folding knife, or folding knife is not a dirk or dagger unless the blade of the knife is exposed and locked into position." (Italics omitted.) The instruction provided no definition of the phrase "locked into position." In its written response to the jury's note, the court stated it could not give further guidance on the definition of locked into position, directed the jury to refer to the definition of dirk or dagger contained in CALCRIM No. 2501, and indicated that whether a knife blade is locked into position was a question of fact for the jury to decide.[8]

---

[7]     The jury's note stated: "Stuck─don't agree. What do we do? [¶] Laws─definition of Dirk or Dagger─'locked into position'"

[8]     The court's response to the jury's note stated in full: "The definition of 'dirk or dagger' is contained in instruction [No.] 2501. Whether or not a knife blade is 'locked into position' is a question of fact for the jury to decide, and the court cannot give further guidance on that question. If the jury were to reach a point where there is not a

However, the jury's request for a legal definition of locked into position does not establish that section 16470 is unconstitutionally vague. The California Supreme Court has explained that "[t]he rule to be applied in determining whether the meaning of a statute is adequately conveyed by its express terms is well established. When a word or phrase "'is *commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law*, the court is not required to give an instruction as to its meaning in the absence of a request."'" (*People v. Estrada* (1995) 11 Cal.4th 568, 574, italics added.) Here, the phrase "locked into position" is a phrase that is commonly understood by those familiar with the English language and is not used in section 16470 in a technical sense peculiar to the law.

We reject the Attorney General's contention that, "[b]ased on the plain language" of section 16470, the phrase "locked into position" means "fully open" and, thus, section 16470 "reasonably defines [a dirk or dagger] as any folding knife, other than a switchblade, [that is] fully fixed into an open position," whether or not the blade "mechanically lock[s] into place." By claiming the phrase "locked into position" should be construed to mean "fully open," the Attorney General is necessarily suggesting that the phrase "exposed and locked into position" in section 16470 can be replaced by the phrase "exposed and fully open" without altering the meaning of the statute. Such an interpretation, however, would essentially rewrite section 16470 and render plain express language adopted by the Legislature—the phrase "locked into position"—meaningless.

reasonable probability that further deliberations would result in a unanimous verdict, the jury should advise the court that the jury is deadlocked."

18

We have already concluded that the plain and commonsense meaning of the phrase "locked into position" is "firmly fixed in place or securely attached so as to be immovable." However, a knife with a blade that is "fully open" could also be a knife—like Castillolopez's Swiss Army knife—that has a blade which, when fully open, is *not* "locked in place" because it is not firmly fixed in place or securely attached so as to be immovable. Thus, the statutory construction proposed by the Attorney General is in conflict with the plain meaning of the express language in section 16470. As the Attorney General's proposed interpretation of section 16470 essentially would render the express phrase "locked into position" meaningless surplusage, we decline to adopt it. (*People v. Kennedy*, *supra*, 168 Cal.App.4th at p. 1241.)

The Attorney General invites this court to examine the legislative history of the statutory definition of dirk or dagger now codified in section 16470. However, as we have concluded there is no ambiguity or uncertainty in the definition of dirk or dagger set forth in section 16470, we presume the Legislature meant what it said, and "we need not resort to legislative history to determine the statute's true meaning." (*Cochran*, *supra*, 28 Cal.4th at p. 401).

Were it necessary for this court to consider the legislative history, we would conclude the Attorney General's reliance on it is unavailing. Among other things, the Attorney General relies on a 1996 letter from California State Assembly Member Diane Martinez expressing her intent in authoring 1995 legislation (Assem. Bill No. 1222) that amended the definition of dirk or dagger by replacing the former requirement that the knife be "primarily designed, constructed, or altered to be a stabbing instrument designed

19

to inflict great bodily injury or death," with the requirement (now codified in § 21310) that the knife be "capable of ready use as a stabbing weapon that may inflict great bodily injury or death."  In her letter, which was published in the Assembly Journal for the 1995-1996 Regular Session, Assembly Member Martinez stated in part:

> "In sponsoring [Assem. Bill No.] 1222 [the 1995 legislation], the California District Attorneys Association sought to eliminate the 'primarily designed' language which had given rise to prosecutorial problems and to substitute language aimed at preventing surprise knife attacks by prohibiting the carrying of concealed knives that are particularly suited for stabbing and that are readily accessible to the user.  [¶] According to a police training video prepared by the Orange County District Attorney who drafted the 'capable of ready use' language contained in the current statute,[9] *folding knives are not 'dirk*[s] *or daggers,' unless they are carried in an open and locked position.*  This is due to the fact that, when folded, they are not 'capable of ready use' without a number of intervening machinations that give the intended victim time to anticipate and/or prevent an attack.  [¶] Thus, *the definition of 'dirk or dagger' amended by my* [*Assembly Bill No.*] *1222 last year was not intended to prohibit folding knives.*  I believe this is consistent with the intent of the Legislature."  (6 Assem. J. (1995-1996 Reg. Sess.) p. 9163, italics added; see *In re George W.*, *supra*, 68 Cal.App.4th at pp. 1212-1213 [discussing the legislative history of the statutory definition of "dirk or dagger," including the 1995 legislation and Assembly Member Martinez's letter].)

The Attorney General's reliance on Assembly Member Martinez's legislative intent letter is unavailing because, as the Court of Appeal noted in *In re George W.*, *supra*, 68 Cal.App.4th at page 1213, she was "expressing concerns over the unanticipated broad reach of the definition of 'dirk or dagger' to include folding knives and pocketknives."  As shown by the italicized portion of the foregoing quotation, Assembly Member Martinez

---

9    Former section 12020, subdivision (c)(24).  (See *In re George W.* (1998) 68 Cal.App.4th 1208, 1212-1213.)

20

specifically stated in her letter that "folding knives are not 'dirk[s] or daggers,' unless they are carried in an open and locked position." Her comments in the letter do not support the Attorney General's assertions that the phrase "locked into position," which is now codified in section 16470, means "fully open"; and that "fully opened pocketknives are considered locked into position for purposes of the definition in [section 16470]." On the contrary, she stated in the letter that "the definition of 'dirk or dagger' amended by my [Assembly Bill No. 1222] last year was not intended to prohibit folding knives."

For all of the foregoing reasons, we conclude the statutory definition of dirk or dagger—including the phrase "locked into position"—codified in section 16470 is not unconstitutionally vague.

## II. *SUFFICIENCY OF THE EVIDENCE*

Castillolopez next contends his conviction must be reversed because the evidence is insufficient to support the jury's finding that the Swiss Army knife found in his jacket at the time of his arrest was a dirk or dagger within the meaning of sections 16470 and 21310 because an unaltered Swiss Army knife like his "can never be locked into position." We conclude Castillolopez's conviction of carrying a concealed dirk or dagger in violation of section 21310 must be reversed because it is not supported by substantial evidence that the open blade of his Swiss Army knife was locked into position within the meaning of section 16470.

### A. *Standard of Review*

When assessing a challenge to the sufficiency of the evidence supporting a conviction, we apply the substantial evidence standard of review, under which we view

the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

B. *Analysis*

The Attorney General claims sufficient evidence supports the jury's finding that Castillolopez's folding Swiss Army knife was a dirk or dagger because the phrase "locked into position" in the definition of dirk or dagger set forth in section 16470 "encompasses folding knives with their blades *fully exposed*" (italics added); and, "[o]n the facts of this case, the jury [properly] found that [Castillolopez] violated [section 21310] because he possessed a knife that was *fully open* and therefore 'locked into position'" (italics added). In support of this claim, the Attorney General contends the testimony of the prosecution's expert, Investigator Gary, that a Swiss Army knife clicked into the *fully opened* state is considered in the "exposed and locked position," provides substantial evidence supporting the jury's determination that the knife was "locked into position" within the meaning of section 16470. The Attorney General also contends Castillolopez's "own expert testified that a Swiss Army knife with the blade clicked into place is 'locked.'"

22

These contentions are unavailing because they are based on the erroneous premise that the phrase "locked into position" in section 16470 means "fully open." For reasons already discussed, we have rejected this interpretation of the phrase "locked into position" and have concluded this phrase, when given its plain and commonsense meaning, means "firmly fixed in place or securely attached so as to be immovable."

Our review of the evidence, viewed in the light most favorable to the prosecution, discloses no substantial evidence from which a rational trier of fact could reasonably find the fully opened or exposed blade of the concealed folding Swiss Army knife Castillolopez was carrying at the time of his arrest was firmly fixed in place or securely attached so as to be immovable, such that it was locked into position within the meaning of section 16470; and, thus, there is no substantial evidence that he was carrying a concealed dirk or dagger in violation of section 21310. The Attorney General's reliance on the testimony of the prosecution's expert, Investigator Gary, is unavailing. It is true, as the Attorney General points out, that Investigator Gary testified that a Swiss Army knife blade that is clicked into the fully opened position is considered to be in the "exposed and *locked* position" (italics added). Specifically, he testified that the blade "click[s] into place" and makes "kind of a clicking sound" when the spring tension is overcome and the blade is opened. The prosecutor then asked him, "Is that the position . . . that the blade would have to be in to be in the exposed and locked position?" Investigator Gary replied, "Yes."

However, Investigator Gary did not explicitly or implicitly testify that a Swiss Army knife like Castillolopez's, when "clicked" into the fully opened position, is firmly

23

fixed in place or securely attached so as to be immovable. On the contrary, Investigator Gary acknowledged on direct examination that, although a Swiss Army knife blade in the opened position can puncture soft material, it cannot easily puncture something hard, like a binder, without collapsing. Investigator Gary also opined in response to the prosecutor's questioning that the effectiveness of this type of folding pocketknife as a stabbing instrument is limited because if the blade should hit something hard like a bone, there is a risk it would collapse on the user. It is beyond reasonable dispute that an opened folding-knife blade capable of collapsing upon striking an object is capable of moving, and thus is not immovable. Investigator Gary testified he would classify the Swiss Army knife as more of a tool than a stabbing instrument, and opined it "wouldn't . . . be considered a fighting knife like a stabbing tool."

On cross-examination, Investigator Gary acknowledged that the word "lock" generally means to make something "immovable." He also acknowledged that nothing on the Swiss Army knife needed to be manipulated in order to lock the opened blade into place or to unlock it. Specifically, defense counsel asked him, "Is there anything on this Swiss Army [k]nife that you have to manipulate to either lock it into place or unlock it from place?" Investigator Gary replied, "If—in terms of a separate part, no there is not." In sum, Investigator Gary's expert testimony does not constitute substantial evidence from which a reasonable trier of fact could find that the opened blade of Castillolopez's Swiss Army knife was firmly fixed in place or securely attached so as to be immovable, such that it was locked into position within the meaning of section 16470.

24

The Attorney General also contends the evidence fully supports the jury's finding because "even [Castillolopez's] expert," Flores, "testified that when a Swiss Army [k]nife clicks into place it 'is locking into position.'" This contention is unavailing because the Attorney General misconstrues Flores's testimony. On recross-examination, the prosecutor asked Flores to open the large blade of Castillolopez's knife, and Flores complied. The prosecutor then asked whether Flores "notice[d] a click," and Flores indicated that he did. The prosecutor then asked, "[W]hen it clicked, is that locking into position?" Flores answered, "[I]t is locking into position, yes, sir, when it opens." On redirect examination, the following exchange then occurred between defense counsel and Flores as Flores held the opened Swiss Army knife and then closed it in response to counsel's request:

> "[Defense counsel:] When you say [the blade] is locked into that position, is it *mobile*?
>
> "[Flores:] *Yes, it is*.
>
> "[Defense counsel:] Can you try to close it right now? [¶] You just closed it very easily; right? *So when you say 'locked,' it doesn't necessarily mean the common sense of the term we understand where it's immobile*; *correct?*
>
> "[Flores:] *I would consider locking as in its final state of where it's supposed to be at*.
>
> "[Defense counsel:] Okay. So that's what you mean by 'locking'? It's as open as it's going to get?
>
> "[Flores:] Right.
>
> "[Defense counsel:] *Would you consider it to be locked in the terms that a locking[-]blade knife is locked?*

25

"[Flores:] *No, sir.*" (Italics added.)

Defense counsel also asked Flores, "When . . . the prosecution asked you is that [blade] locked into position, and you said yes[,] . . . [¶] . . . [w]ould you ever yourself describe this blade as being locked?" Flores replied, "No, sir."

However, on further recross-examination, the prosecutor asked Flores, "But you would describe it as locked into position?" Flores responded, "For this knife, I would say it's locked in position." Immediately thereafter, on further redirect examination, the following exchange occurred between defense counsel and Flores in which Flores explained that he used the phrase "locked into position" to mean only that the blade had opened as far as it could open:

> "[Defense counsel:] "Again—I mean, I know this is a little game of semantics. I apologize. But it is important. [¶] W*hen you say 'locked into position'—I just want to be clear—what do you mean*?
>
> "[Flores:] *I just mean that it's the final spot of opening, and it will not allow it to open any more.* And that's basically it. [¶] . . .
>
> "[Defense counsel:] Not a locking knife, right?
>
> "[Flores:] That is correct.
>
> "[Defense counsel:] [*W*]*hen you agree with the prosecution's question that that knife is locked into position, you're merely stating that that is in the final place, meaning the knife is not going to go back any further; correct?*
>
> "[Flores:] *That is accurate.*
>
> "[Defense counsel:] *Would you agree that that is a non-locking knife?*
>
> "[Flores:] *Yes, sir.*" (Italics added.)

26

The foregoing record of Flores's testimony shows the Attorney General's reliance on Flores's expert testimony is misplaced because, while Flores stated in response to the prosecutors questions that the blade of Castillolopez's Swiss Army knife locked into position, Flores corrected himself and explained he used that phrase to mean only that the blade would not open any further. Nothing in Flores's testimony would support a finding by a reasonable trier of fact that the opened blade of Castillolopez's Swiss Army knife was firmly fixed in place or securely attached so as to be immovable, such that it was locked into position within the meaning of section 16470.

For all of the foregoing reasons, we conclude there is no substantial evidence from which a rational trier of fact could reasonably find beyond a reasonable doubt that the fully opened or exposed blade of the concealed folding Swiss Army knife Castillolopez was carrying at the time of his arrest was firmly fixed in place or securely attached so as to be immovable, such that it was locked into position within the meaning of section 16470. Thus, we also conclude there is no substantial evidence to support the jury's verdict that Castillolopez carried a concealed dirk or dagger in violation of section 21310. Accordingly, we reverse Castillolopez's conviction.[10]

---

[10] In light of our decision that Castillolopez's conviction of carrying a dirk or dagger in violation of section 21310 must be reversed, we need not, and do not, reach the merits of his claim of instructional error or his claim that the court abused its discretion in denying his *Romero* motion.

DISPOSITION

The judgment is reversed.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

AARON, J.